FINCHER *v.* HANEGAN.

Opinion delivered May 19, 1894.

*Record of mortgage—Mistake as to middle initial.*

Where Henry M. Ward executed a crop mortgage by the name of Henry N. Ward, and executed a second mortgage of the same crop by the name Henry M. Ward, the record of the first mortgage was constructive notice to the second mortgagee, under the rule that the middle initial of a name is immaterial, where it did not appear that there was more than one Henry Ward in the county.

Appeal from Nevada Circuit Court.

RUFUS D. HEARN, Judge.

Action by Hanegan against Fincher. The facts were as follows: In 1891 Henry M. Ward executed a mortgage to Hanegan of his crop of cotton for that year, and signed and acknowledged the same by the name of Henry N. Ward, which mortgage was at once duly recorded. Subsequently, Ward executed a second mortgage of the same crop to Fincher, and signed and acknowledged it correctiy by his name, Henry M. Ward. The second mortgage was also duly recorded. Before taking his mortgage Fincher wrote to the recorder to know if there was any mortgage on record against Henry M. Ward for the year 1891, to which the latter replied that there was not. Fincher sold goods to Ward under his mortgage, and in the fall bought two bales of cotton from him, the proceeds of which were applied to

his account.    After Fincher had sold the cotton, he received a letter from Hanegan, notifying him that he held a mortgage on it.   This was the first notice Fincher had of Hanegan's mortgage, except the record of the same.   After making personal demand of Fincher for the cotton, or its proceeds, Hanegan brought this action. It was proved that Ward's true name was Henry M. Ward ; but that he was known to Hanegan as Henry Ward ; that he was the only Henry Ward known in the county.   The cause was tried by the court without a jury.    Fincher asked the court to declare the law to be :

"That the middle Christian name, or initial of same, when signed as part of a name to an instrument required by law to be recorded, becomes, and is, as much the name, or part thereof, as any other part."

"That in this case the record of the mortgage signed Henry N. Ward was no notice to defendant, who purchased the property in question from Henry M. Ward."

The court refused to make these declarations, or either of them, and rendered judgment in favor of plaintiff for $74.39, the value of the cotton and interest. Defendant moved for a new trial.    This being overruled, he excepted and appealed.

*Hamby & White* for appellant.

A middle Christian name or initial, when signed as part of a name to an instrument *required by law to be recorded*, becomes and is as much the name, or part thereof, as any other part.   The record of a mortgage signed Henry *N.* Ward was no notice to defendant, who purchased from Henry *M.* Ward.   As between mortgagor and mortgagee, " the law knows but one Christian name," and the mortgage signed Henry *N.* was good ; but it was not notice to subsequent purchasers from Henry *M.*, and void against strangers.   Definite descrip-

tion of the property mortgaged is essential as against strangers. So, we insist, a definite description and *iden-tification* of the mortgagor is essential. 63 Ind. 576; 39 Ark. 394; 41 *id.* 70; 43 *id.* 350; 14 L. R. A. (N. C.), p. 393. The rule that "the law knows but one Christian name" has no place in our law of notice by the registra-tion of an instrument. Pom. Eq. Jur. secs. 649, 654, 655, and cases. 14 L. R. A. (Pa.), p. 690.

*Wm. M. Greene* and *Jas. H. McCollum* for ap-pellee.

1. The law attaches no weight, value or significance whatever to the middle Christian name or initial. It recognizes but one Christian name. The middle name or initial is immaterial, and may be stricken out or disre-garded, or treated as surplusage. 3 Pet. 1; 14 *id.* 322; 12 Ark. 622: Lawson's Rights, Rem. and Pr., Vol. 5, sec. 2268; 1 Hill, 102; 2 *ib.* 566; 2 Cow. 463; 27 Tex. 503; 73 Ga. 25; 4 Johns. 119, note A; 5 *id.* 84; 21 Am. Rep. 179; 3 S. W. Rep. 764; Tiedeman, Real Prop. sec. 798; 25 Ill. 251; 1 Am. St. Rep. 89; 43 Am. Dec. 597; 80 *id.* 534; 99 *id.* 350 and note.

2. But granting that the middle initial is material, the facts in this case, and the mortgage on record, were sufficient to put appellant on enquiry. See Jones, Ch. Mortg. sec. 54; 54 Ark. 158; 25 Neb. 453; 13 Am. St. Rep. 501.

BATTLE, J. Was the mortgage by Henry *M.* Ward to W. A. Hanegan, under the name of Henry *N.* Ward, after it was acknowledged and filed for record, notice of its existence and contents to W. T. Fincher, the second mortgagee? As between Hanegan and Ward, the mort-gage was undoubtedly valid, for the reason that Ward was estopped from saying that Henry *N.* Ward was not his true name. But it could, under no circumstances, be valid against third persons who acquired liens on, or

purchased, the property thereby mortgaged, until it was filed for record. Mansfield's Digest, sec. 4743. If it had been executed and properly acknowledged by the mortgagor, under his true name, and filed for record, it would have been valid against all liens subsequently acquired by third persons from the mortgagor, and against all subsequent purchasers from Ward of the mortgaged property. Did the insertion in his name of the letter *N* instead of *M*, the correct initial of his middle name, render it invalid as to subsequent lienors and purchasers? Upon similar questions there is a contrariety of opinion.

In *Gillespie* v. *Rogers*, 146 Mass. 612, it is said: "Where deeds or other instruments requiring to be recorded are given or received by persons or corporations known by different names, the records may fail to furnish exact and literal information; and yet, when the instrument itself is a genuine one, and has been executed in good faith, the record has been held sufficient to furnish constructive notice of the real transaction. A striking illustration of this is found in a former decision of this court. The St. of 1865, c. 43, sec. 2, provided that no assignment of future earnings should be valid against a trustee process, unless recorded in the town or city clerk's office before the service of process. A man by the name of Germain Sirois, who was also sometimes called John Keever, made an assignment of his future earnings under the name of Joseph Cyr, which name he signed by his mark, being unable to read or write. This was duly recorded. There was no intention of misleading any body by the wrong name affixed to the assignment; it was a mistake, the man being an ignorant foreigner, who could not speak English. Afterwards a creditor brought a trustee process. It was held that the assignment was good as between the original parties to it, and, being recorded, was good as

against attaching creditors. *Ouimet* v. *Sirois*, 124 Mass. 162; See also *Gifford* v. *Rockett*, 121 Mass. 431; *O'Connor* v. *Cavan*, 126 Mass. 117."

In *Alexander* v. *Graves*, 25 Neb. 453, the opinion of the court is succinctly and correctly stated in the syllabus of the case as follows: "A purchased certain personal property from B on time, and, for the purpose of securing the purchase price, executed a chattel mortgage on the property purchased. The purchase was made, and the chattel mortgage was executed, under an assumed and ficticious name. The parties to the transaction being unacquainted, the vendor supposed the name given was the true name of the purchaser. The purchaser stated that his residence was in Webster county, which was correct, and the mortgage was duly filed in the proper office in that county. Subsequent to the filing of the mortgage, A sold the property to C, under his true name, after C had examined for chattel mortgages executed by A, and found none. In an action of replevin by B against C for the possession of the mortgaged property, it was held that B should recover judgment." This decision, it seems to us, was based upon the fact that the mortgage was executed and filed before the second purchase, the court holding that the purchaser from the mortgagor had constructive notice of the existence of the prior chattel mortgage from the record.

In *Johnson* v. *Hess*, 9 Lawyers Reports Annotated, 471, (an Indiana case), it appears that a judgment was recovered against Henry William Mankedick, and was entered in the record of the court and upon the judgment docket as recovered against " William Mankedick." He purchased a tract of land after the rendition of the judgment, and it was conveyed to him as " H. W. Mankedick." Thereafter, he sold and conveyed it to James G. LaForte, and described himself in the deed as

"H. W. Mankedick." LaForte then sold and conveyed it to William Johnson. Afterwards, an action was instituted by Johnson to enjoin the sale of the land under an execution on the judgment against Mankedick. Upon this state of facts, this question arose: "Was the judgment as recorded constructive notice to Johnson of its lien? The court held that Johnson was chargeable with notice of the existence of the judgment against William Mankedick, and of the amount and terms and condition of it, but nothing more; that he was not chargeable with notice that his remote grantor, H. W. Mankedick, and William Mankedick, named in the judgment, was the same person;" that "the judgment did not disclose the fact, nor did it suggest an inquiry which 'would have led up to' an ascertainment of the fact;" that "for all legal purposes, the full name of Johnson's grantor was Henry Mankedick;" and that "the middle initial was unimportant, and suggested nothing."

In *Crouse* v. *Murphy*, 12 Lawyers Report Annotated, 58 (a Pennsylvania case), one Daniel J. Murphy owned a lot in the city of Philadelphia. "His deed for the same was regularly recorded, as was a mortgage given by him for a part of the purchase money. He took and he incumbered the title in his proper name as Daniel J. Murphy. Roggenmoser desired to buy the lot. He found the title properly recorded, and incumbered by a mortgage. Turning from the recorder's office to that of the prothonotary, he caused search to be made for liens on the judgment index against Daniel J. Murphy, and found none. He then completed his purchase, settled the purchase price, and received and recorded his deed. This was in 1888. In June of that year, Murphy went to Chicago to reside. In 1889, the plaintiff, who had a judgment against Daniel Murphy, issued his writ of *sci. fa.*, and served Roggenmoser as terre-tenant." The court said: "Was the judgment against Daniel

Murphy a lien on the lot? It is admitted that Daniel Murphy and Daniel J. Murphy are the same person. It is clear, therefore, that real estate in the hands of that person would be bound. Having signed his name in the form in which it appears on the judgment index, he could not object to the enforcement of the judgment against his property. As between him and his creditor, it is a question of personal identity. But the defendant is not objecting. It is a purchaser who bought after a search of the records, and with no actual notice of the existence of this judgment, who claims protection. If he did all the law required of him, he is entitled to protection against the judgment of the plaintiff. If he did not, then he must suffer for his want of care in making the search." And, continuing, the court said: "Murphy's title was on record. Whoever dealt with him on the credit of his real estate was bound to know what appeared in his recorded title. It was as much the duty of one who was about to trust him with money or goods because of his ownership of land to know how and by what name he held it, as it was the duty of one about to purchase the land to make the same inquiries. If the creditor neglected his duty, he must lose in consequence. If the purchaser neglected his, he must lose. Because the creditor in this case did neglect to examine the record, he has a note signed with only a part of the maker's name on which judgment has been entered. With no notice of the habit of his vendor to sign notes in several different ways, and with no means of notice of liens but the record, the purchaser examined, exhausted the means of knowledge within his reach, and, finding no lien against Daniel J. Murphy, or D. J. Murphy, settled with his vendor, and took his deed. If one of these parties must lose, in good conscience it should be he whose neglect to avail himself of the information which the record

could have given him made the loss by the one or the other inevitable."

In *Mackey* v. *Cole*, 79 Wis. 426, the plaintiff claimed certain horses by virtue of a chattel mortgage given to him by one McPherson, who was the owner, but executed the mortgage on them in the name of John Doyle, who had no interest in them. The mortgage was given to secure a loan of $210, and was taken by an agent who had the money of the plaintiff to lend. When McPherson applied to him for the loan, he gave his name as John Doyle. The agent, not knowing him, made inquiries about Doyle, but ascertained nothing. Believing McPherson to be the man he represented himself to be, he received the mortgage, filed it in the proper office, and advanced the $210 on the horses. About ten days after this, McPherson sold the horses to the defendant, who was a *bona fide* purchaser for value, with no notice of any lien on the property other than would be implied from the filing of the mortgage. The court held that the filing of the mortgage for record was no notice to the defendant, because it was executed under a fictitious name.

This case is unlike that of *Crouse* v. *Murphy*, *supra*. The title of Ward to the mortgaged property did not appear of record to Hanegan. It does not appear that Hanegan was chargeable with neglect of duty in failing to examine the record to see in what name Ward held his property. It is unlike the case of *Mackey* v. *Cole*, *supra*, in which the mortgagor did not execute the mortgage by his surname. In this case Ward executed the mortgage by his true Christian name and surname.

Was Fincher, the second mortgagee, chargeable with notice of Hanegan's mortgage? It is contended that he was not, because the initial of Ward's middle name does not appear in his signature to the Hanegan

mortgage, he having executed it by the name of Henry
N. Ward when his true name is Henry M. Ward. But
this was immaterial, unless there were more than one
person of the same name, and the middle name or the ini-
tial thereof was necessary to identify the Henry Ward
who had executed it. "The law knows but one Chris-
tian name. The entire omission of a middle letter is not
a misnomer or a variance. The middle letter is imma-
terial, and a wrong letter may be stricken out or disre-
garded." *State* v. *Smith*, 12 Ark. 622; *Keene* v. *Meade*,
3 Pet. 1; *Games* v. *Stiles*, 14 Pet. 322. To hold, unquali-
fiedly, that the wrong initial of Ward's middle name in
Hanegan's mortgage affected its validity as to third per-
sons would be ignoring this well established rule of law.
There can be no good reason for disregarding it in any
case, unless it appear that there be more than one per-
son of the name in question. There is nothing in the
spirit or letter of our registration laws which can oper-
ate as a repeal of the entire rule. In registration, as in
other departments of the law, the exception should pre-
vail in cases where there are more than one person of the
same name, and the middle name or initial thereof is nec-
essary to distinguish or identify them. In this case
there was no evidence to show that there was more than
one Henry Ward in Nevada county, where the Hanegan
mortgage was recorded. If there were, the courts can-
not take judicial notice of that fact, and the burden was
on the second mortgagee to show that there was. Wit-
nesses living in Nevada county testified that they knew
of only one "in the county," and the evidence shows that
he executed both mortgages. Under the circumstances,
sufficient appears to show that Fincher was put on in-
quiry to ascertain whether the Henry Ward who execu-
ted the mortgage to him was not the same person who
executed the Hanegan mortgage. He did not make it.
The presumption is, if he had, it would have led to the

ascertainment of that fact.  He was, therefore, charge-able with notice of the execution of the Hanegan mort-gage by Henry M. Ward and its contents.

. Judgment affirmed.

BUNN, C. J., dissenting.  In dissenting from the opinion of the majority of the court in this case, I as-sume, on the one hand, that the appellant, the junior mortgagee, acted in perfect good faith, for it is only the question in its legal aspect that I wish to discuss at all. On the other hand, the appellant must be considered as having examined the record of appellee's mortgage and known its purport.

In all cases where the question is one between the parties, and is, moreover, one of identity merely, such as all criminal cases, matters of pleadings, and identifica-tion of parties so as to show chain of title, the saying that the "law knows but one Christian name," or that the "middle name and its initial letter are immaterial," may go, at least, without comment.  So, also, the im-portance of the middle name may, in many instances, not be apparent in cases of absolute conveyances, especially of real estate.  Moreover, in a case where the grantor is known as well by one name as by the other, the mid-dle name may not be so important.  But in the increas-ing commerce of the world, and the closer relation into which men are daily being brought, one to another, in their business, and the growing necessity for greater particularity and nicer observances of the strict rules regulating the absolute and relative rights of property, it is altogether a repetition of the language of a past age to say that middle names are immaterial, and need not be taken notice of.

Again, while the name of the owner, in case of real estate, may not be of such great importance, yet that rule does not hold good in case of personal property, when the *name* of the owner is, in fact and in truth,

always an essential element of the description of the property itself.

After all, there could be little excuse for intruding a discussion of this kind upon the public, were it not for the peculiarity of our registration laws. I need not remind anyone of the fact that, while no one can be an innocent purchaser of property included in an absolute conveyance, of which he has actual notice, whether it be recorded or not, or is in possession of such knowledge of facts as will put him on the inquiry to acquire all essential knowledge on the subject, no such rule applies to the case of mortgages. Actual knowledge of the existence of an unrecorded mortgage binds no one. Neither is any one in possession of any actual knowledge whatever on the subject bound to add thereto by pushing his inquiries.

The law imputes to every one a knowledge of the record of a mortgage on property about which he attempts to deal, it matters not whether the imputation, in itself, be in fact true or false. The condition thus imposed is in some respect a hard one, and is only justified in its imposition by an admitted necessity, and a principle of unyielding public policy. But there is a corresponding relief in this, that the dealer is only bound to ascertain the language of the record, and to exercise himself to understand correctly its meaning and purport. He is bound to enquire no further than is plainly suggested in the language of the record; otherwise, he would be trespassing upon the domain of actual knowledge, which has no place in matters of this kind.

There is nothing in the description or location of the property in controversy, as contained in Hanegan's mortgage, to suggest any identity with the cotton in Fincher's mortgage, nor is there any identity between other articles of property mentioned in the two. There

is nothing in the locality of ownership to suggest identity. Whatever suggestion is made is the suggestion that a recorded mortgage by Henry N. Ward is a mortgage in fact made by Henry M. Ward; a person known to the enquirer by that name, which is his true name. The same rule that would obliterate the distinction.between these two initials would also do away with the distinction between the name "Henry Newport Ward," and the name "Henry Monroe Ward," for it is as confidently said that middle names are immaterial as it is that the initials of such names are to be disregarded. Where is the line of demarcation? Some rules, conventionalities and laws suffer total infraction, even when violated only as to the jot or tittle, though they themselves are so extensive in their application as to cover the affairs of the universe; and it is for this reason that it is the fact of the breach, and not its extent or apparent magnitude, that is to be considered. I am afraid that the opinion of the majority has set a precedent that will rise up to plague us hereafter.

I cite no authorities, being content to rest the case on the authorities cited by the majority.