## CHARLES TURK v. MARTIN BENSON.

(152 N. W. 354.)

**Abstracter — making abstract of title — liability on.**

> An abstracter is not liable for failure to show a judgment against William J. Rideout upon search for William G. Rideout.

Opinion filed April 10, 1915. Rehearing denied April 26, 1915.

Appeal from the District Court of Pierce County, *Burr,* J.
Reversed.

*Torson & Wenzel,* for appellant.

A judgment is not a lien upon specific property, but merely gives a right to levy, to the exclusion of subsequent adverse interests. 23 Cyc. 1350 (A).

The erroneous omission or introduction of a middle initial in defendant's name, or a mistake in such middle initial, will prevent the judgment from having effect as a lien. 23 Cyc. 1358 (ii) and note 40;

Note.—The liability of a title abstracter is the subject of notes in 12 L.R.A. (N.S.) 449; 26 L.R.A.(N.S.) 1207; 42 L.R.A.(N.S.) 176; and 72 Am. St. Rep. 315.

Johnson v. Hess, 126 Ind. 298, 9 L.R.A. 471, 25 N. E. 445; Crouse
v. Murphy, 140 Pa. 335, 12 L.R.A. 58, 23 Am. St. Rep. 232, 21 Atl.
358; Hutchinson's Appeal, 92 Pa. 186; Davis v. Steeps, 87 Wis. 472,
23 L.R.A. 818, 41 Am. St. Rep. 51, 58 N. W. 769; Wicker v. Jenkins,
49 Tex. Civ. App. 366, 108 S. W. 188.

Under such circumstances, plaintiff should not have paid the judg-
ment.   He had no valid notice of its existence, and it was not enforce-
able against him.   16 Am. & Eng. Enc. Law 133, note 1; Wood v.
Reynolds, 7 Watts & S. 406; Hopper v. Lucas, 86 Ind. 43; Stott v.
Irwin, 2 Chester Co. Rep. 137; Long v. Campbell, 37 W. Va. 665,
17 S. E. 197; King v. Clark, 7 Mo. 269; Carney v. Bigham, 51 Wash.
452, 19 L.R.A.(N.S.) 905, 99 Pac. 22; Dutton v. Simmons, 65 Me.
583, 20 Am. Rep. 729; Ambs v. Chicago, St. P. M. & O. R. Co. 44
Minn. 266, 46 N. W. 321; Bowen v. Mulford, 10 N. J. L. 230.

*Albert E. Coger* and *T. A. Toner,* for respondent.

It is generally held that the omission of the middle initial, or a mis-
take in such an initial, is entirely immaterial in legal proceedings,
whether civil or criminal.   The law recognizes but one Christian name.
Johnson v. Day, 2 N. D. 295, 50 N. W. 701; Rev. Codes 1905, § 2238;
Comp. Laws 1913, § 3097; Pollard v. Fidelity F. Ins. Co. 1
S. D. 570, 47 N. W. 1060; Stever v. Brown, 119 Mich. 196,
77 N. W. 704; Moseley v. Reily, 126 Mo. 124, 26 L.R.A. 721,
28 S. W. 895; Beattie v. National Bank, 174 Ill. 571, 43
L.R.A. 654, 66 Am. St. Rep. 318, 51 N. E. 602; Fincher v.
Hanegan, 59 Ark. 151, 24 L.R.A. 543, 26 S. W. 821; Huston v.
Seeley, 27 Iowa, 190; Pinney v. Russell & Co. 52 Minn. 443, 54 N.
W. 484; Miltonvale State Bank v. Kuhnle, 50 Kan. 420, 34 Am. St.
Rep. 129, 31 Pac. 1057; 21 Am. & Eng. Enc. Law, 307; 16 Am. &
Eng. Enc. Law, 114; Laflin & R. Powder Co. v. Steytler, 14 L.R.A.
690, note; People v. Lake, 110 N. Y. 61, 6 Am. St. Rep. 344, 17 N.
E. 146; Sullivan v. State, 6 Tex. App. 333, 32 Am. Rep. 580; Allen
v. Taylor, 26 Vt. 599; Felker v. New Whatcom, 16 Wash. 178, 47 Pac.
505; Long v. Campbell, 37 W. Va. 665, 17 S. E. 197; State v. Martin,
89 Me. 117, 35 Atl. 1023; Re Snook, 2 Hilt. 568; Bletch v. Johnson,
40 Ill. 116; Games v. Stiles, 14 Pet. 322, 327, 10 L. ed. 476, 478;
Fink v. Manhattan R. Co. 15 Daly, 479, 8 N. Y. Supp. 327, 29 N. Y.

S. R. 153; Erskine v. Davis, 25 Ill. 251; Milk v. Christie, 1 Hill, 102; Morgan v. Woods, 33 Ind. 24; Mutual L. Ins. Co. v. Doherty, 23 C. C. A. 144, 39 U. S. App. 468, 77 Fed. 853; Rooks v. State, 83 Ala. 80, 3 So. 720; State v. Smith, 12 Ark. 622, 56 Am. Dec. 287; Hicks v. Riley, 83 Ga. 332, 9 S. E. 771; Langdon v. People, 133 Ill. 382, 24 N. E. 874; Schofield v. Jennings, 68 Ind. 232; Ross v. State, 116 Ind. 495, 19 N. E. 451; State v. Bowman, 78 Iowa, 519, 43 N. W. 302; Nicodemus v. Young, 90 Iowa, 423, 57 N. W. 906; Sparks v. Sparks, 51 Kan. 195, 32 Pac. 892; Nolan v. Taylor, 131 Mo. 224, 32 S. W. 1144; King v. Hutchins, 28 N. H. 580; Dilts v. Kinney, 15 N. J. L. 130; Western Loan & Sav. Co. v. Silver Bow Abstract Co. 31 Mont. 448, 78 Pac. 774; Smith v. Holmes, 54 Mich. 104, 19 N. W. 767; Holmes v. Crooks, 56 Neb. 466, 76 N. W. 1073; Hirshiser v. Ward, 29 Nev. 228, 87 Pac. 171; United States Wind Engine & Pump Co. v. Linville, 43 Kan. 455, 23 Pac. 597; Mallory v. Ferguson, 50 Kan. 685, 32 Pac. 410; Lattin v. Gillette, 95 Cal. 317, 30 Pac. 545; Dutton v. Simmons, 65 Me. 583, 20 Am. Rep. 729; People ex rel. Bush v. Collins, 7 Johns. 549; Geller v. Hoyt, 7 How. Pr. 265; Clute v. Emmerick, 26 Hun, 10; Weber v. Fowler, 11 How. Pr. 458; Haverly v. Alcott, 57 Iowa, 171, 10 N. W. 326; Hibberd v. Smith, 50 Cal. 511; Gillespie v. Rogers, 146 Mass. 612, 16 N. E. 711.

A judgment at once becomes a lien against real property of the judgment debtor in the county, upon docketing and recording same. Bostwick v. Benedict, 4 S. D. 414, 57 N. W. 79.

If the names as indexed are *idem sonans,* the docket entry is sufficient. Green v. Meyers, 98 Mo. App. 438, 72 S. W. 128; Delaney v. Becker, 14 Pa. Super. Ct. 392.

BURKE, J. In April, 1907, defendant Benson was a bonded abstracter, and as such prepared and certified an abstract of title for plaintiff to a certain lot which defendant was about to purchase from one William G. Rideout. At said time, there was in said county a judgment docketed against William J. Rideout upon which there was due the sum of $87.58. The abstracter knew neither the judgment debtor nor any person of the name of Rideout within the county, and certified that there was no judgment of record "against any of the within-named grantees, . . . which are liens on said premises." On

the strength of this abstract, plaintiff purchased the lot, and claims that he was later forced to pay the amount due upon the judgment because said judgment was a debt of William G. Rideout which had been erroneously docketed against an imaginary William J. Rideout. Plaintiff had judgment in the court below and defendant appeals.

(1) But one question is presented to us for decision, namely, whether it was the duty of the abstracter to show that there was a judgment docketed against William J. while making certificates relative to William G. Respondent relies largely upon the case of Johnson v. Day, 2 N. D. 295, 50 N. W. 701. He admits in his brief, however, that there has always been a division of the authorities as to the effect of the omission of, or mistake in, the middle initial, and further admits that in the case of Dutton v. Simmons, 65 Me. 583, 20 Am. Rep. 729, the court says: "But there has been a growing dissatisfaction with the doctrine of the ancient cases upon this subject; and in this state (and Massachusetts) the old doctrine must be regarded both by the precedents and practice as overruled." The trial court in his memorandum decision, although attempting to follow the Johnson-Day Case, recognizes the weight of the contrary doctrine and the fact that in the Johnson-Day Case the question at issue was between the parties to a mortgage,—the rights of third persons not being involved.

Appellant cites a long line of cases showing that the ancient rule that the court would pay no attention to a middle initial has been largely, if not entirely, abrogated by the modern decisions. This is, of course, a natural consequence of the increase of population and the frequence with which persons appear with both Christian names and surnames identical. Aside from the distinction as to the age of the authority, there is a still further division of the cases along the lines of the extraneous knowledge of the person making the examination. Thus, if William G. Rideout had been served in a civil action with a summons in which his name had been erroneously written William J. Rideout, it is not likely that the proceedings would have been held to be a nullity, because certain duties devolved upon him by reason of the fact that he was made the recipient of a copy of the summons. For this very reason the case of Johnson-Day, supra, is not in point in this case, it being evident that a notice relative to mortgage wherein there was a description of the land, and page where it might be found in a certain book,

and other means of identification, would not as readily be vitiated by an erroneous initial in the mortgagor's name as would the judgment in the case at bar. In a case note at page 415 of volume 7 L.R.A. (N.S.) will be found a *résumé* of most of the cases in point upon this question. A perusal thereof will impress the reader with the necessity of considering the circumstances of each case, rather than relying upon any rule of law. The rule is likewise given in Cyc.: "The erroneous omission or introduction of a middle initial in defendant's name, or a mistake in such middle initial, will prevent the judgment from having effect as a lien." 23 Cyc. 1358 (ii) and note 40; Crouse v. Murphy, 140 Pa. 335, 12 L.R.A. 58, 23 Am. St. Rep. 232, 21 Atl. 358; Hutchinson's Appeal, 92 Pa. 186; Davis v. Steeps, 87 Wis. 472, 23 L.R.A. 818, 41 Am. St. Rep. 51, 58 N. W. 769; Wicker v. Jenkins, 49 Tex. Civ. App. 366, 108 S. W. 188; Notes in 14 L.R.A. 394 and 7 L.R.A. (N.S.) 416; Warvelle, Abstracts, §§ 466, 467; Johnson v. Wilson, 137 Ala. 468, 97 Am. St. Rep. 52, 34 So. 392; Johnson v. Hess, 126 Ind. 298, 9 L.R.A. 471, 25 N. E. 446; Davis v. Steeps, 87 Wis. 472, 23 L.R.A. 818, 41 Am. St. Rep. 51, 58 N. W. 769; Phillips v. McKaig, 36 Neb. 853, 55 N. W. 259; Grundies v. Reid, 107 Ill. 304.

As stated in the note in 23 L.R.A. 818: "The general rule by which an initial of a middle name is regarded as no part of the name is denied application to the case of docketing a judgment for constructive notice." Judgments stand in a class by themselves because there is no extraneous data from which the examiner can determine the identity of the person. In this it differs from chattel mortgages, where the searcher always has the description of the property covered thereby as a guide to aid him in determining the identity of the person executing the same. For these reasons we limit the application of this rule to judgments alone, leaving other questions to be determined when reached. In the case at bar there is nothing to indicate that William J. was the same and identical person as William G., the middle initials being different. Had one or the other of the initials been entirely omitted, and either the grantee of the deed or the judgment debtor been shown as simply William Rideout, a different state of facts would exist, and possibly it would be the duty of the abstracter to show the judgment. Upon this, however, we express no opinion. Under the existing facts, however, he was confronted with a name which, though similar, was yet complete, and

distinctly different from the one for whom his search was being conducted, and he could not be expected to index this different name. If plaintiff's contention were adopted it would cast upon the abstracter not only the duty of making search for similar names, but also the burden of determining the validity of the lien created by these judgments. This is not the contemplation of the law. The plaintiff herein, being a subsequent purchaser without notice, was under no obligation to pay such judgment. 16 Am. & Eng. Enc. Law, 133, note 1, and cases cited. The judgment is reversed, with instructions to dismiss the action.

Goss, J., dissenting. Did the judgment docketed in the name of Wm. J. Rideout operate to give constructive notice that the judgment was against Wm. G. Rideout, the true name of the judgment debtor, or put the searcher upon inquiry to determine the fact of identity? This precedent stops not with the question of constructive notice concerning judgment dockets, but under our law as to filing of chattel mortgages also indexed only as against the mortgagor, our holding as to constructive notice will likewise apply to constructive notice afforded by the chattel mortgage indices of mortgagors, and either oblige a party to search, or relieve the party interested from search, with reference to the middle initial or name, according as this case is determined. The laws as to constructive notice afforded by tens of thousands of entries of record are thus in effect passed upon by this decision. This is mentioned that the importance of this precedent in business affairs may not be overlooked in connection with the policy of electing, if so it may be termed, which rule of several prevailing throughout the United States as to constructive notice concerning middle names shall be imputed by these records. Because of this the writer offers this dissent.

In order to avoid confusion in application of precedent it is well to state some of the general rules to be deduced from decisions. It should be remarked that indices of real estate records and decisions thereon concerning identity of names and initials or abbreviations for names are not altogether precedent as to the rule of constructive notice to be here announced. Concerning real estate transactions the records compelled to be kept by law usually, if not always, afford a double check to the purchaser against error, inasmuch as in addition to the index by

grantors and mortgagors there is the tract index, so that notice is afforded from indices of both the tract and the grantor. However, in the judgment docket as in the index of mortgagors of chattel mortgages, the searcher or prospective purchaser must rely for notice upon the name alone, in the absence of any actual knowledge of the facts. Then, again, between the parties themselves the name or designation is wholly immaterial, as proof may supply identity, or actual knowledge may impute facts, or the parties may be estopped from asserting invalidity of or want of record notice. And the same is true in pleadings in both civil and criminal cases. While old decisions may be found requiring strictness of proof in criminal cases, they have long since ceased to be the law, and the matter has resolved to the mere question of identity of the party as the party served with process or charged with crime. So decisions on such matters are not precedent.

At common law there were but two material parts to a name, namely, the surname and the Christian name; the former the family name, the latter the baptismal name. No middle name was recognized at common law as the badge of identity, but strictness was required in the designation of both Christian and surnames, but the Christian name could be designated by initial or abbreviation and still impart constructive notice. Thus, John Brown could be designated as J. Brown, and constructive notice in the latter would operate as well as in the former; but Jas. Brown could, under no circumstances, be held to impart constructive notice that the person intended was John Brown. Thus emphasis was laid at common law upon the correct designation of the Christian name or abbreviation for it. And such explains decisions like Johnson v. Hess, 126 Ind. 298, 9 L.R.A. 471, 25 N. E. 446, wherein a judgment against one William Mankedick was held not to charge constructive notice to a purchaser from Henry William or H. W. Mankedick, inasmuch as no notice could be imputed that they were in the same person, because the Christian name or initial standing therefor apparently designated a different person. To that extent there is unanimity in the holdings.

Some few states, as Wisconsin, base their holdings upon the letter of their statute, and are driven to what, in the absence of statute, can properly be designated as extremely technical or unreasonable holdings. The Wisconsin statute requires an entry to be made of "the name *at length*

of each judgment debtor." Under this statute it was held in Davis v. Steeps, 87 Wis. 472, 23 L.R.A. 818, 41 Am. St. Rep. 51, 58 N. W. 769, quoting from the syllabus, "a docket of a judgment against Edward Davis is not, under a statute requiring the entry to set out 'the name at length of each judgment debtor,' constructive notice to a bona fide purchaser of a judgment against E. A. Davis or Edward A. Davis." Manifestly the statement of this holding condemns it as precedent, where we have no statute requiring such a conclusion. The Massachusetts rule is that, whether the record is right or wrong as a compliance with the statute, the loss must fall upon the purchaser. This is on the theory that the fault, if at all, must be held to be in the law as to constructive notice. If the law does not properly safeguard the purchaser, the fault is charged to the purchaser or the law, and not to prior parties. In Illinois the rule is that the law protects the purchaser of property by the title which appeared of record, unless there was notice of something to the contrary; "therefore, one who made a loan in reliance on the record title was protected against a prior judgment against the owner by another name, although he was as well known by the latter as by the former." Note in 7 L.R.A. (N.S.) at p. 417, and Grundies v. Reid, 107 Ill. 304, although in the case announcing that rule the decision could have been put upon common-law grounds that Charles E. and Conrad E. were not, from constructive notice, to be presumed to be the same person.

Maine in Dutton v. Simmons, 65 Me. 583, 20 Am. Rep. 729, departed admittedly from the common law and "the law of the Supreme Court of the United States, and of many, if not most, of the state courts in this country," and followed Massachusetts, which state had in Com. v. Hall, 3 Pick. 262, held that Charles Hall and Charles James Hall are to be regarded as different names.

Pennsylvania in 1844 departed from the common-law rule in a *per curiam* opinion (Wood v. Reynolds, 7 Watts & S. 406), holding that a judgment entered against John M. Gruver in the name of John Gruver did not impart constructive notice. There was no discussion of cases attempted. It was later followed by a *per curiam* opinion in Hutchinson's Appeal, 92 Pa. 186, cited in the majority opinion. These cases were later overruled by Jenny v. Zehnder, 101 Pa. 296, wherein an entry on the judgment index as "F. Zehnter" was held to be notice

to a purchaser of title from "John Jacob Frederick Zehnder," an extreme holding even under common-law doctrine. In this case an opinion was written. Later the Zehnder Case was expressly overruled in Crouse v. Murphy, 140 Pa. 335, 12 L.R.A. 58, 23 Am. St. Rep. 232, 21 Atl. 358, and that court reverted to its early rule, and held that, where record title was in the name of Daniel J. Murphy, a judgment against Daniel Murphy did not attach to defeat a purchaser who, subsequent to the judgment and in ignorance thereof, bought from the judgment debtor by deed taken in the name of Daniel J. Murphy; and in the opinion it is said that a judgment entered in the name of D. Murphy or Dan Murphy or Daniel Murphy is no notice to one who takes title from the same party as Daniel J. Murphy. And this is the only logical outcome of the holding in the instant case. *If the change of the initial is material, to be consistent its omission must likewise be held to be fatal,* and consistency is no less a jewel in judicial opinions than in demeanor. But in the recent decision of Burns v. Ross, 215 Pa. 293, 7 L.R.A. (N.S.) 415, 114 Am. St. Rep. 963, 64 Atl. 526, that same court holds, "The record of a judgment against one whose Christian name is Francis, if indexed under the name of Frank, charges a prospective purchaser from the judgment debtor's heirs with notice of the existence of the judgment," on common-law reasoning concerning Christian names and their derivation, though in that jurisdiction the common law is repudiated as to middle names or initials for middle names, the common law recognizing no middle name. It is upon these Pennsylvania cases and that of Johnson v. Hess, 126 Ind. 298, 9 L.R.A. 471, 25 N. E. 445, heretofore discussed (which really turned upon a difference in Christian names instead of the use of initials for middle names) upon which the text at 23 Cyc. 1358, is wholly based. It reads: "Further the erroneous omission or introduction of a middle initial in the defendant's name, or a mistake in such middle initial, will prevent the judgment from having effect as a lien." This classifies and differentiates authority apparently sustaining the majority holding. It seems to me apparent that the weight of authority, as well as of reason, is to the contrary and supports the judgment rendered. Nearly all the other jurisdictions hold to the common-law theory as declared in Games v. Stiles, 14 Pet. 322–327, 10 L. ed. 476–479, that "the law knows but one Christian name, and the *omission or insertion* of *the middle name* or of *the initial*

*letter of that name is immaterial."* 21 Am. & Eng. Enc. Law, 2d ed. 307, says that "it is generally held that the law does not recognize a middle name, and therefore in a legal instrument an omission of the middle name or initial, or a mistake in such name or initial, or the insertion of a middle initial in a name, which has only two members, is of no importance;" citing cases from many jurisdictions. Fallon v. Kehoe, 99 Am. Dec. 347, and note (38 Cal. 44); note to Choen v. State, 21 Am. Rep. 181; Illinois C. R. Co. v. Hasenwinkle, 15 L.R.A.(N.S.) 129, and note (232 Ill. 234, 83 N. E. 815); Fincher v. Hanegan, 24 L.R.A. 543, and note (59 Ark. 151, 26 S. W. 821); Beattie v. National Bank, 174 Ill. 571, 43 L.R.A. 654, 66 Am. St. Rep. 318, 51 N. E. 602; and note to Burns v. Ross, 7 L.R.A.(N.S.) 415. These authorities cite many other cases. Last, but not least, this state in Johnson v. Day, 2 N. D. 295, 50 N. W. 701, years ago elected to follow the common law, "It is now quite generally held that the omission of the middle initial, or a mistake in such initial, is entirely immaterial in legal proceedings, whether civil or criminal; *the law recognizes but one Christian name;"* and in the syllabus of the case the statement is reiterated that "the law recognizes but *one* Christian name." There is merit in respondent's contention that the statements in this holding have become a rule of property in this state; and it may have been under reliance thereon that plaintiff paid this judgment, assuming from the language and reasoning in Johnson v. Day that it was necessary to do so to protect his property. It has been held in State Finance Co. v. Halstenson, 17 N. D. 145, 114 N. W. 724, following similar reasoning, that the omission "of the initial letter (of the middle name) creates no doubt or suspicion as to the identity of the person requiring extrinsic evidence to show identity;" holding that a mortgage given by Ole S. Ackerland on land standing of record in the name of Ole Ackerland would be presumed to be given by the record owner, the court stating that "the use of the initial 'S' in the mortgages, although it was not used in the patent, is immaterial; it is not an unusual occurrence to drop an initial in writing a name, and the authorities are general that such fact does not constitute a misnomer or variance;" citing Johnson v. Day, 2 N. D. 295, 50 N. W. 701. In Styles v. Theo. P. Scotland & Co. 22 N. D. 469–479, 134 N. W. 708, it was held that a mortgage given by "Charlie" was not an instrument recorded without the chain of title which stood of

record in the name of "Charles W. Goodman;" citing Woodward v. McCollum, 16 N. D. 42, 111 N. W. 623.

As intimated at the beginning of this dissent, the rule announced in this case is bound to be precedent as to what constructive notice is imputed from the index of mortgagors of chattel mortgages. No fine-spun distinction consistently can be drawn between constructive notice imparted from a judgment docket and the constructive notice imparted from an index of chattel mortgagors. There is a lame attempt in the main opinion to make this distinction in the assertion, "judgments stand in a class by themselves, because there is no extraneous data from which the examiner can determine the identity of the person. In this it differs from chattel mortgages, where the searcher always has the description of the property covered thereby as a guide to aid him in determining the identity of the persons executing the same. For these reasons we limit the application of this rule to judgments alone, leaving other questions to be determined when reached." This statement begs as well as befogs the issue, because it is not the chattel mortgage that affords constructive notice, but the record of the indexing of it. When the searcher running through, not the mortgages, but the chattel mortgage index of mortgagors, discovers indexed a chattel mortgage given by W. J. Rideout upon a search of chattel mortgages for Wm. G. Rideout, the searcher must have the same right to rely or not upon whether the middle initial imparts notice, as he does in this instance where the judgment docket shows Wm. J. instead of Wm. G. It is the judgment docket which, by imparting notice or not, says he must or must not search further. Under the rule announced in the majority opinion he need not consult the judgment or make further inquiry, something that must strike the ordinary man as permitting culpable negligence in a search of the records by one about to buy on the strength of them. It certainly renders an abstract of title a delusion and a snare. The rule is announced emphatically in 24 Am. & Eng. Enc. Law, 151, in the following language, every word of which is used advisedly and is of importance as defining the rule governing searches of judgment dockets and chattel mortgage indexes both and alike "the constructive notice which flows *exclusively from the record* cannot be more extensive than the facts stated *therein,* and must be understood to be only such notice as could have been obtained from an actual inspection of *the record.* A subse-

quent purchaser is entitled to rely upon the *record,* and cannot be charged with constructive notice of latent equities or facts not disclosed or suggested by the *record itself."* If this be law, this decision will prove embarrassing the first time a subsequent encumbrancer in effect says to us that, "following the rule announced in Turk v. Benson, I was under no obligation to look for a prior chattel mortgage upon this property, as the name of my mortgagor is Wm. G. Rideout, and the purported prior chattel mortgage in question, that I did not look up, was against Wm. J. Rideout." It will be equally perplexing when the situation is presented to this court that arose in the leading cases followed by it, cited in the majority opinion from Pennsylvania and Wisconsin, and this court is asked to pass upon whether a judgment entered as against Daniel Murphy, judgment debtor, was a lien upon land owned of record in the name of Daniel J. Murphy but deeded out from under said judgment. Again, the majority opinion attempts to hedge by the following statement contained in it: "Had one or the other of the initials been entirely omitted, and either the grantee of the deed or the judgment debtor been shown as simply William Rideout, a different state of facts would exist, and possibly it would be the duty of the abstractor to show the judgment. *Upon this, however, we express no opinion."* Why not express an opinion? Every case cited to support and that does support this holding most emphatically expresses just that opinion. The trouble is the opinion, and the holdings followed are so out of harmony with business usage and ordinary ideas of prudence that the majority opinion has seen fit to refrain from expressing an opinion upon something that the precedent cited and followed has held upon. To illustrate, examining the precedent cited: In Crouse v. Murphy, the holding is that Daniel Murphy is not Daniel J. Murphy. In Davis v. Steeps, 87 Wis. 472, 23 L.R.A. 818, 41 Am. St. Rep. 51, 58 N. W. 769, from Wisconsin, it is expressly held that a judgment entered against Edward Davis is not constructive notice that the judgment debtor is E. A. Davis or Edward A. Davis. Our court refrains from expressing an opinion upon this matter, but by the very fact of refusing to do so indicates that it may or may not follow in the future the same precedent it cites and follows as authority for this decision, upon which and similar precedent, it justifies its departure in this case from the common-law rule. Grundies v. Reid, 107 Ill.

304, is cited, while Illinois, as heretofore stated, has a separate rule of its own. Likewise, too, Johnson v. Hess, the Indiana case cited, but followed the common law. In Phillipps v. McKaig, 36 Neb. 853, 55 N. W. 259, cited in the majority opinion as authority, it is held that a judgment entered against "May *Alley*" was not constructive notice to a purchaser of the real estate from "May Ann *Alley;*" the decision could not have been otherwise and the common law been followed. In Johnson v. Wilson, 137 Ala. 468, 97 Am. St. Rep. 52, 34 So. 392, cited in the majority opinion, the following from the syllabus makes its citation seem strange: "The record of a mortgage executed in the name of *A.* W. Dickson is not notice to purchasers for value that *J.* W. Dickson executed it." This decision also but follows the common law. But in Johnson v. Wilson is found the following: "The case of Fincher v. Hanegan, 59 Ark. 151, 24 L.R.A. 543, 26 S. W. 821, cited by appellant's counsel, only involved a mistake in the *initial letter of the middle name* of the mortgagor. In that case the mortgagor executed the first mortgage by his *true* Christian name and surname. The court held that the middle letter was *immaterial as the law recognizes but one Christian name.* It is therefore not an authority upon the question here involved, if abstractly sound, of which we express no opinion." That court there expressly refrained from venturing an opinion upon the very subject upon which the majority here cites and deems it an authority. Wicker v. Jenkins, 49 Tex. Civ. App. 366, 108 S. W. 188, does squarely support the majority holding. It also cites and follows the same cases from Pennsylvania, Wisconsin, and Indiana, as does the majority opinion. In that opinion is the following: "Would one in searching the record of this abstract know that 'W. B. F. Wicker' was the same person as 'W. F. B. Wicker?'" Ordinary prudence would seem to say, "Yes, ascertain the fact,—such similarity should invoke inquiry." Common law also answers, "yes." If this be authority for its holding, evidently this court should also be prepared to hold that any transposition of middle initials destroys any presumption of identity. The L.R.A. notes cited in the majority opinion but classify the holdings, as has been attempted in this dissent, and but little if anything more.

To the writer it would seem that, if any departure from the common law is to be declared, it should be based upon the Illinois rule wherein the record title of the real estate controls. The rule is arbitrary, but

no more so than the hybrid or mongrel one that must be adopted wherever the common-law rule that the middle names or initial is immaterial is departed from. This decision seems to me to, in effect at least, overrule the basic reasoning in Johnson v. Day, and to demonstrate its fallacy by its attempt to draw distinction, contrary to the very authorities upon which it is based. It can, therefore, result only in unsettling the prior settled and established law of this state upon a very important matter. But whatever the effect of this precedent it has been declared after thorough consideration. The writer is of the opinion that the judgment should be affirmed.