**UNITED STATES of America, Plaintiff,**
**v.**
**R. D. WILMANS & SONS, Inc.,**
**Defendant.**
**No. 267.**

United States District Court
E. D. Arkansas, N. D.
Dec. 21, 1956.

Osro Cobb, U. S. Atty., Walter G. Riddick, Asst. U. S. Atty., Little Rock, Ark., and Dan P. Chisholm and Louis W. Bone, Attorneys, U. S. Department of Agriculture, Little Rock, Ark., for plaintiff.

Kaneaster Hodges, Newport, Ark., for defendant.

LEMLEY, District Judge.

This cause having been tried to the Court, and the Court being well and fully advised doth file this memorandum opinion in lieu of formal findings of fact and conclusions of law:

The plaintiff, United States of America, brought this action against the defendant, R. D. Wilmans & Sons, Inc., an Arkansas corporation, to hold the latter liable as a converter of 20 bales of cotton produced by one Daniels on the Maude Stephens farm in Jackson County, Arkansas, during the year 1952, which cotton Daniels sold to the defendant. The plaintiff claims that this cotton was covered by a chattel mortgage executed by Daniels on March 26, 1952, in favor of the Farmers Home Administration, an agency of the United States, hereinafter called "FHA," that the defendant was charged with constructive notice of said mortgage, and that when it purchased the cotton from Daniels, it became liable as a converter thereof.

The defendant admits that it purchased from Daniels 20 bales of cotton produced during 1952 on the Stephens farm, but it denies that such cotton was covered by the plaintiff's mortgage, and contends, on the other hand, that said cotton was subject to a chattel mortgage in its favor, executed by Daniels on April 1, 1952. It is further contended that even if said cotton was covered by the FHA mortgage, the defendant was not charged with constructive notice thereof because the instrument was executed in the name of "Ben J. Daniels," whereas the mortgagor's true name was "J. B. Daniels," under which name the defendant's mortgage was taken. It is still further contended, in the alternative, that in any event the crops grown on the Stephens farm had been released from the lien of the FHA mortgage if they were in fact ever covered thereby.

The following facts are substantially undisputed:

On March 26, 1952, Daniels, being indebted to the FHA, executed and delivered to that agency a crop and chattel

mortgage whereby he granted, bargained, sold and conveyed to it "* * * the following crops or chattels all of which are located or to be located on the premises known as the *Joe Davis* farm or ranch, located and situated approximately. *5* miles in a *North* erly direction from the town or city of *Newport* in the county of *Jackson*, and State of Arkansas:

"(1) All crops now standing, planted, or grown, and all crops that may be planted or grown within twelve (12) months from the date hereof on the lands above described and on any other lands cultivated by the Mortgagor in the same county(ies).

"(2) The following-described livestock (including poultry):

(Here follows a description of a horse, a mare, and a hog, with which we are not concerned.)

"(3) Other chattels described as follows:

(Here follows a list of miscellaneous farm implements and equipment not involved in this case.)

"(4) All livestock, farm equipment, machinery, tools, and other farm personal property now owned or which may hereafter be acquired by the Mortgagor during the time this mortgage is effective."[1]

That mortgage was signed "Ben J. Daniels," as were other mortgages given by him to the FHA in prior years. Said instrument was duly endorsed, "To Be Filed But Not Recorded," which endorsement was signed by an agent of the mortgagee, and was duly filed with the

Circuit Clerk and ex officio recorder of Jackson County, as provided by Ark. Stats. § 16–201.[2]

At about the same time that the foregoing mortgage was executed Daniels rented the so-called Maude Stephens farm, likewise in Jackson County, and approached the representatives of the FHA with the end in view of obtaining an additional loan to finance the making of a crop on that farm. He was advised, however, that under its regulations FHA could make him no further loan; he then inquired of the County Supervisor as to the effect of his borrowing money from someone else for the purpose stated, and he was told that the only effect that such action on his part would have would be to render him ineligible to borrow from the FHA the following year.

On April 1, 1952, Daniels borrowed certain moneys from the defendant to enable him to cultivate the Stephens place, and to secure that indebtedness he executed a crop and chattel mortgage covering the 1952 crops on that farm, which mortgage was signed, "J. B. Daniels," and was, as in the case of the FHA mortgage, duly endorsed "To Be Filed But Not Recorded," which endorsement was signed by the mortgagee, and was duly filed with the Circuit Clerk on a date subsequent to the filing of the FHA mortgage.

Daniels harvested 20 bales of cotton from the Stephens farm and sold them to the defendant; neither Daniels nor the defendant ever accounted to the FHA for the proceeds of such sale, and it is upon this sale that the plaintiff bases

---

1. This mortgage was prepared on a printed FHA form, and the italicized words and phrases were typed into blank spaces on the form. The lists of the livestock and implements and equipment were also typed, and the remainder of the description was printed. The description of the property appears on three separate pages of the mortgage instrument; the first page ends with the colon immediately following the word, "Arkansas"; the description of the crops appears at the extreme top of the second page, and is in much smaller print than that appearing on the first page, and is immediately followed by the description and list of the livestock, which list is the most prominent feature of the second page. The remainder of the description is on Page 3 of the Mortgage.

2. Under that statute when a chattel mortgage, so endorsed and signed, is filed with the Circuit Clerk it becomes a lien as to third parties from the date of filing; such a mortgage is not spread at large upon the records of the County, but the original is kept on file by the Circuit Clerk and is available to the public for inspection.

its claim that the defendant is liable to it as a converter, Daniels being still indebted to the plaintiff.

■ After the foregoing transactions had taken place, the County Supervisor in consideration of a cash payment of $450 made by Daniels released the chattels covered by the mortgage; but the Supervisor had no authority to release any mortgaged crops, except to a limited extent not here applicable, nor did he purport to do so. Nor did the Supervisor have any authority to vary the terms of the mortgage.

While the parties have stipulated that the "Ben J. Daniels," who executed the FHA mortgage, and the "J. B. Daniels," who executed the mortgage to the defendant, are one and the same person, there is a dispute as to his correct name, the plaintiff contending that his correct name is "Ben J. Daniels," whereas the defendant asserts that "J. B. Daniels" is the correct designation of the mortgagor.

■ The overwhelming weight of the evidence discloses that the correct name of the mortgagor is "Joseph Benny Daniels" or "J. B. Daniels." That fact is established not only by his own testimony, but also by the fact that for many years prior to the inception of the instant controversy he has signed checks and other documents as "J. B. Daniels," and that his marriage certificate, issued in 1927, shows his name to be "J. B. Daniels." We are satisfied that his designation in the FHA mortgage and in the files of that agency as "Ben J. Daniels" stems from an error made in the Newport office of the FHA when Daniels first began doing business there, whereby his initials were transposed, and that he has signed FHA documents as "Ben J. Daniels" merely to conform to the erroneous

designation just mentioned. Daniels was known only to the FHA as "Ben J. Daniels"; and, as a matter of fact, the officials of that agency were on notice of the fact that he customarily signed his name as "J. B. Daniels." They continued, however, to erroneously designate him as "Ben J. Daniels."

■ While it is true that Daniels' correct name is "J. B. Daniels," the evidence also establishes that Daniels was generally known in Jackson County simply as "Ben Daniels," without any initial preceding or following the name "Ben," and that he was so known to Mr. R. D. Wilmans, the head of the defendant corporation prior to the time that he made his loan and prior to the time that he purchased the cotton grown on the Stephens farm; and there is no evidence that there was any other person in Jackson County known as "Ben Daniels" or by either of the other two names that have been mentioned.[3]

From the record before us and the briefs of the parties, it appears that there are two questions for decision: First, whether or not the crops produced on the Maude Stephens farm were covered by the FHA mortgage; and, Second, if so, whether or not the defendant was charged with constructive notice of that fact. If both of those questions are answered in the affirmative, then the plaintiff is entitled to prevail, otherwise not.

While from a logical standpoint those questions should be discussed in the order named, the view that we take of this case renders it desirable to consider the second one first.

■ Although there is no evidence here as to whether or not Mr. Wilmans or anyone else acting for the defendant

---

3. The Court Reporter's notes reflect the following testimony of Mr. Wilmans on that point:

"Q. Mr. Wilmans, you said you had known Mr. Daniels; by what name had you known him prior to the time he began doing business with you? A. Just Daniels.

"Q. Just Daniels? A. More or less Daniels, Ben Daniels."

While Mr. Wilmans also testified that there are "quite a few Daniels" in Jackson County, he did not testify that any of them are known as "Ben Daniels" or "Ben J. Daniels" or "J. B. Daniels" or any other pertinent combination of names or initials.

actually searched the chattel mortgage records before the defendant made its loan to Daniels or bought from him the cotton in question, the defendant was, of course, charged with knowledge of such facts as those records disclosed and such additional facts as would have been disclosed by such investigation as the records would have suggested to a person of ordinary prudence. Fincher v. Hanegan, 59 Ark. 151, 159–160, 26 S.W. 821, 24 L.R.A. 543; see also In re Greer College and Airways (Greer v. Klein), 7 Cir., 53 F.2d 585, 586 and cases there cited.

█ In view of the fact that the mortgagor was generally known in Jackson County as "Ben Daniels," as well as by the name of "J. B. Daniels," and particularly in view of the fact that Mr. Wilmans prior to doing business with him knew him as "Ben Daniels," we are satisfied that a person of ordinary prudence in Mr. Wilmans' position examining the records and seeing the name "Ben J. Daniels" appearing therein as one who had executed a crop and chattel mortgage in favor of the FHA would have been moved to inquire, before lending money to or buying cotton from Daniels, whether or not the "Ben J. Daniels" appearing in the records was the same person known to him simply as "Ben Daniels." And we are also of the opinion that had such inquiry been made, it would have revealed that the two names referred to one and the same person. Hence, we conclude that the defendant was charged with constructive notice of the mortgage.

In that connection it should be said that the error in nomenclature with which we are here concerned does not precisely correspond to the errors involved in the several Arkansas decisions bearing on the subject to which we have been cited,[4] hence, we cannot consider any of those cases as being directly in point. The error here, however, does correspond to that considered in Union Bank v. Monroe County Bank, Ala.App., 44 So.2d 799, 800, cited in the plaintiff's reply brief. In that case one Thomas Clyde Stacy (Joseph Benny Daniels) gave a first mortgage under the name Clyde T. Stacy (Ben J. Daniels) and a second mortgage under the name T. C. Stacy (J. B. Daniels). On a showing that there was no other person in the county by the name of Clyde Stacy, that the mortgagor was generally known as Clyde Stacy, and that the second mortgagee knew him by that name, it was held that the jury might properly conclude "that if the appellant bank had examined the records the identity of the mortgagor would have been observed and there would have been imputed to the appellant constructive notice of the existence of a prior mortgage on the property in question." That case is in point, and, as indicated, we have found that had the defendant examined the records of Jackson County it would have been put on inquiry which would have disclosed the fact that "Ben J. Daniels" was the same person with whom the defendant was dealing as "J. B. Daniels."

But our conclusion that the defendant was charged with constructive notice

4. Fincher v. Hanegan, supra, 59 Ark. 151, 26 S.W. 821 (Henry M. Ward gave first mortgage under that name, and later gave second mortgage under his correct name, Henry N. Ward; *Held* the first mortgage was prior, the error in middle initial being immaterial in absence of showing that there was more than one "Henry Ward" in the county); McReynolds v. First National Bank, 156 Ark. 291, 245 S.W. 819 (First mortgage given by "W. H. Hunter," second mortgage given under true name of "W. A. Hunter." *Held*: the second mortgage was prior since initials only were used in both mortgages); First Nat. Bank of Hartford v. Lewis, 162 Ark. 54, 257 S.W. 730 (Where same mortgagor was known in the county by two entirely different names and gave one mortgage under one name and another mortgage under the other name, *Held*: Priority between mortgages determined by respective dates of filing.); Garner v. Cluck, 209 Ark. 912, 193 S.W.2d 661 (essentially the same situation and result as in McReynolds v. First National Bank, supra.)

that Daniels had executed a crop and chattel mortgage to the FHA avails the latter nothing unless it can be said that the 1952 crop on the Stephens farm was included in the plaintiff's mortgage, and on that question we agree with the defendant.

There can be no doubt that under Arkansas law a chattel mortgage covering "all crops grown on X. farm in Y. County, or on any other lands in that county" cultivated by the mortgagor during the crop year includes all crops produced in the county by the mortgagor and is not limited to those grown on "X. farm," and is binding on third parties as to all such crops grown in the county if the mortgage is properly endorsed, signed and filed. Hughes, "Arkansas Mortgages," Section 60; Storthz v. Smith, 109 Ark. 552, 161 S.W. 183; and Lesser-Goldman Cotton Co. v. Hembree, 163 Ark. 88, 259 S.W. 5. And the plaintiff insists that the description of crops in the instant mortgage should be so read. The agent of the FHA who prepared the mortgage form used here, however, was not content to employ the tried and true description approved in the cases that have just been cited, but so drew the mortgage as to create what is to our mind a direct and irreconcilable conflict between the first portion of the granting clause of the mortgage, which specifically states that all of the crops and chattels covered by the instrument are located or to be located on "Joe Davis farm or ranch, located and situated approximately five miles in a northerly direction from the town or city of Newport in Jackson County, Arkansas," which portion is significantly followed by a colon, and the second portion of such clause which in general terms covers all crops of the mortgagor on the "lands above described *and on any other lands cultivated by the Mortgagor in the same county.*" (Emphasis added.) That conflict does not stem merely from punctuation, as the plaintiff suggests, although the use of the colon at the place where it appears is significant, but from the very words and phrases themselves. The mortgage either covered all of the crops

produced by Daniels in Jackson County during 1952, whether on the Joe Davis farm or elsewhere, or it was limited to those produced on that farm; in the first clause, which is specific in nature, it is so limited; in the second it is not. No such conflict appears in the descriptions approved in the Arkansas decisions above mentioned.

A chattel mortgage is, of course, a contract, and in construing such an instrument the courts are governed by the rules applicable to written instruments generally. 59 C.J.S., Mortgages, § 152. It is well settled Arkansas law that in construing a written instrument it is the duty of the court to read the instrument as a whole giving effect, where possible, to all of its provisions and reconciling apparent conflicts where such can be done; where, however, an instrument contains irreconcilable conflicts, then the general provisions must yield to the specific. Mutual Reserve Fund Life Association v. Minehart, 72 Ark. 630, 83 S.W. 323; English v. Shelby, 116 Ark. 212, 172 S.W. 817; Pate v. Goyne, 212 Ark. 51, 204 S.W.2d 900. In Mutual Reserve Fund Life Association v. Minehart, supra, 72 Ark. 630, 633, 83 S.W. 323, 324, the Court said: "Where there are two clauses of a contract in any respect conflicting, 'that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms, although within its general terms the particular may be included; because when the parties express themselves in reference to a particular matter the attention is directed to that, and it must be assumed that it expresses their intent, whereas a reference to some general matter within which the particular may be included does not necessarily indicate that the parties had the particular matter in thought.'"

Another well established rule of construction is that where there is an irreconcilable conflict between written and printed portions of a contract, the former govern. As to this rule American Jurisprudence says: "It is a well-settled rule of law that where part of a contract

is written and part is printed, and the written and printed parts are apparently inconsistent or there is reasonable doubt as to the sense and meaning of the whole, the words in writing will control. The reason greater effect is given to the written than to the printed part of an agreement, if they are inconsistent, is that the written words are the immediate language and terms selected by the parties themselves for the expression of their meaning, while the printed form is intended for general use without reference to particular objects and aims." 12 Am. Jur., "Contracts," Section 253.

When those rules are applied here, it is plain that the mortgage must be limited to the crops grown on the Joe Davis farm. While we may grant the Government's argument that one who lends money to another to make a crop on a particular farm does not necessarily intend to limit his security to those particular crops, he may do so, and the fact here is that the parties were unquestionably contracting with reference to the Joe Davis farm, and the mortgage specifically recites that all of the crops and chattels were to be located on that farm. At the time the mortgage to the FHA was executed, Daniels had not rented the Stephens farm, and there is no reason to believe that any lands other than the Joe Davis farm were in the contemplation of the parties at the time. Furthermore, the designation of the Joe Davis farm and its location were typed into the blanks on the mortgage, and thus represented the "immediate language of the parties." In addition to that, the reference to the "following crops or chattels all of which are located or to be located on the premises known as the Joe Davis farm or ranch * * * in the county of Jackson and State of Arkansas" is followed by a colon, which would ordinarily mean that there is to follow a list of crops or chattels located or to be located on that farm and none other.

It is argued by the plaintiff that the phrase "located or to be located on the Joe Davis farm" refers only to the chattels and not to the crops. That argument cannot be sustained for two reasons: In the first place we do not think that the phrase is fairly susceptible to that meaning; we think that it refers not only to chattels but to crops as well. Secondly, even if the phrase is susceptible to that interpretation it is at best ambiguous, and since the mortgage was prepared by the FHA it must be construed most strongly against it. Pate v. Goyne, supra, 212 Ark. 51, 54, 204 P.2d 900; Bodcaw Oil Co. v. Atlantic Refining Co., 217 Ark. 50, 228 S.W.2d 626; and Arkansas Valley Royalty Co. v. Arkansas-Oklahoma Gas Company, 222 Ark. 213, 258 S.W.2d 51. As a matter of fact, it may be stated without elaboration that if the granting clause as a whole, including the description of the crops appearing on the second page of the instrument, be considered as ambiguous, the plaintiff is still confronted with the rules of construction to the effect that the specific governs the general, that the written provisions control over the printed, and that an ambiguous instrument is to be construed most strongly against the party who prepares it. All of those rules militate against the plaintiff's contentions.

While we recognize that this is an action at law for conversion, and that we are not concerned primarily with purely equitable considerations, nevertheless, we feel that we should state that in our estimation the equities here are strongly with the defendant. The plaintiff lost nothing that it had under its mortgage because of the fact that Daniels cultivated the Stephens farm and sold to the defendant the crops produced thereon; it loaned no money to enable Daniels to make his crop on that farm, and it incurred no expense in connection with that operation. The defendant, on the other hand, did part with its money in financing Daniels on the Stephens place and in buying the crop. The plaintiff's effort, after exhausting its own security, to obtain additional satisfaction from the defendant, on account of its purchase of the crop grown on the Ste-

phens place, is literally an attempt to reap where it did not sow, which should not be countenanced.

Moreover, to give the form of mortgage here involved the construction urged by the plaintiff might well be to lay a trap for innocent persons. The attention of a reasonably prudent business man, undertaking to examine this mortgage, would be immediately struck by the fact that on the first page it is plainly recited that all of the crops or chattels are located or to be located on a particular farm; and if he had no intention of advancing money on the security of crops or chattels located or to be located on that farm or of buying any crops produced thereon, he might well feel that he was required to read no further, particularly in view of the use of the colon to which we have referred. The plaintiff says that such person should "turn the page," but the form and language used is, to our mind, an invitation not to turn the page.

Let a judgment be entered dismissing the complaint herein.