## ESTES v. HARTFORD ACCIDENT & INDEMNITY CO.

### No. 2623.

Court of Civil Appeals of Texas. El Paso.
Jan. 28, 1932.

Rehearing Denied Feb. 11, 1932.

Clarence A. Miller, of Houston, for appellant.

Baker, Botts, Andrews & Wharton, Tom Scurry, and A. P. Jones, all of Houston, for appellee.

### WALTHALL, J.

Hartford Accident & Indemnity Company brought this suit in the district court of Harris county, Tex., to set aside an award made on April 1, 1929, by the Industrial Accident Board under the Texas Workmen's Compensation Law (Rev. St. 1925, art. 8306 et seq. as amended), in favor of W. R. Estes and S. O. Lovejoy. By amendment Lovejoy was omitted from the petition, and we need not again refer to him as a party in the suit. The award provided for the payment of the Hartford Accident & Indemnity Company to W. R. Estes compensation for a definite period of 200 weeks at the rate of $11.54 per week on account of the loss of his left leg by amputation, as a consequence of injury sustained by him on September 5, 1927, in the course of his employment with the Magnolia Compress & Warehouse Company.

Without quoting from the petition, it contained the usual allegations that a final award had been rendered, notice of appeal given, suit filed within the required time, the amount involved was within the jurisdiction of the district court, and the time of the rendition of the award.

The petition to set aside the award alleged that, prior to the rendition of the award, Estes had asserted a claim against the insurance company for an injury occurring September 5, 1927, and that a compromise settlement had been made in the manner provided by law, and with the approval of the Industrial Accident Board, that such final order of approval of said compromise settlement agreement had been entered by the said board September 17, 1928, and releases and receipts executed by Estes and his attorney under said compromise settlement, and that by reason of which the appellee insurance company was discharged of all claims by reason of injuries occurring on said date.

W. R. Estes, after making the usual jurisdictional allegations in his cross-action, alleged that he sustained an injury in the course of his employment on September 5, 1927, while working for the Magnolia Compress & Warehouse Company; that his injury consisted of a severe fracture of the left leg below the knee; that in consequence of said injury he was removed to a hospital and treated by Dr. Carl B. Young, alleged to be an employee and physician of the insurance company; that Dr. Young made certain misrepresentations to him about the condition of his leg; that he relied on such representations, and was induced thereby to enter into a compromise settlement agreement, with the approval of the board, on September 17, 1928; "that said release was executed in fraud of the rights of said defendant, and upon the fraudulent representations and mistaken belief, that he had practically recovered from said injury, and that within a very short time he would have fully recovered therefrom, and that his said left leg would be entirely well and the same one hundred per cent perfect, and that his said leg would be as good as before the injury. * * * that having absolute confidence in the medical opinion and ability of said doctor (Young) and relying thereon, and fully believing that the representations were true, he executed said release, and but for which representations he would not have executed the same." Estes then alleges that said representations were not true "in point of fact," and in his pleadings traverses the said representations, denying the truth of each, and stating the contrary to be true, until about the 21st of January, 1929, when the condition of his leg became so bad it was necessary to have it amputated above the knee. Estes then made allegations as to the average weekly wage compensation at the rate of $11.54 per week, and asked for a recovery of 200 weeks at $11.54 per week, less all compensation theretofore paid.

The insurance company filed answer to Estes' cross-action, in which it again alleged the making of the compromise settlement agreement in September, 1928, with the approval of the board, and that it had paid Estes twenty-five weeks' compensation prior to said compromise settlement, and then paid $253.80 in the compromise settlement award made in September, 1928. The insur-

ance company further alleged that no appeal was taken by either party from the order of the board approving the compromise settlement. It further specially denied the fraud charged against it, and alleged that it made full disclosure to Estes of all information its employees had concerning the nature, extent, and duration of his injuries; that, in addition thereto, Estes, in making the compromise settlement, did not rely upon any statement or representations from any agent, employee, or servant of the insurance company, but consulted and relied upon the advice of physicians of his own choice and selection, and was fully informed of all facts at the time he made the settlement.

At the conclusion of the testimony, the trial court granted the motion of the insurance company for a peremptory instruction to the jury in its favor, and on the return of such verdict judgment was entered in its favor vacating and setting aside the award of the board appealed from, and decreeing that Estes recover nothing. Estes' motion for a new trial was overruled, and Estes duly prosecutes this appeal.

### Opinion.

In discussing the matters presented on this appeal, Estes will be referred to as appellant and the insurance company as appellee.

All matters of fact not brought into controversy here were agreed to by the parties, the agreement is in writing, and was offered in evidence on the trial. Such matters of agreement are stated in plaintiff's preliminary statement, which agreement we need not copy here, but will refer to it when necessary. Attached to the compromise settlement agreement in question are the letter of the board approving the agreement, settlement receipts, receipt for attorney fees, final order entered by the board approving the settlement, the final ruling and award of the board made on April 1, 1929, in favor of appellant, written reports of Drs. Young, Armstrong, and Corbett, agreement that $11.54 is the rate of compensation recoverable.

Appellant's first and second propositions submit that the compromise settlement made between the parties, and involved in this controversy, is not binding on appellant, unless the said settlement shows that the liability of appellee, or the extent of injury of appellant, is uncertain, indefinite, or incapable of being satisfactorily established; and that, since the compromise settlement in question did not in itself show that the liability of appellee or the extent of the injury to appellant employee to be uncertain, indefinite, and incapable of being satisfactorily proved, the compromise settlement agreement is not binding on appellant as a matter of law, and for that reason it was error for the court to give the peremptory charge in favor of appellee.

Briefly stated, the record shows substantially the following: On the 14th of September, 1928, appellant and appellee entered into a compromise settlement agreement wherein, after the injury was recited, it was agreed that: "Whereas, the facts and circumstances connected with and surrounding the infliction of said injury, make the liability of Hartford Accident & Indemnity Co. uncertain and indefinite, or incapable of being satisfactorily established, as is made apparent from the following:" Here was attached medical reports of Dr. Carl B. Young, Dr. E. M. Armstrong and Dr. L. B. Corbett, in which report Young stated that, while there was some disability due to stiffness in the ankle joint and some weakness in the leg, appellant had made an almost 100 per cent. recovery, there being no impairment of his weight bearing areas. Dr. Armstrong stated that the then condition of appellant's leg would justify the opinion that at least he should be considered to have a 25 or 30 per cent. permanent disability. Dr. Corbett gave it as his opinion that appellant should be allowed a total disability for a period of one year from the date of injury and a 25 per cent. disability thereafter. It was further agreed by the parties that the statutory provisions of section 12, part 2 (Rev. St. art. 8307), of the Workmen's Compensation Law, which relates to compromise settlements, has application to this claim for compensation under said act, and that the parties apply the act by agreeing to compromise and settle said claim for the sum stated, that was for $253.80, in addition to the amount theretofore paid. The compromise settlement was made subject to the approval of the board and the payment of the agreed amount.

The board advised the parties that the settlement agreement had its approval; the sums of money were paid and receipts therefor filed with the board, and on September 22, 1928, the board entered its order approving in all things the compromise settlement. It was agreed on the trial that no appeal was taken by either party to the above order of approval by the board.

Appellant in his pleading does not question the binding effect upon the parties of the compromise settlement other than on the ground stated. No attack was made upon the award in the trial court, the theory of appellant's pleading and proof was to the effect that the compromise settlement was not of binding effect because of the alleged mistake and the alleged fraud in procuring the settlement by the fraudulent representations of Dr. Young, and his mistake as to the true condition of his leg, and which condition was known to the appellee. Appellee pleaded the compromise settlement award in bar of appellant's right to additional compensation awarded by the board on April 1, 1929.

■■ Appellant did not plead that the compromise settlement agreement and its approval of the board did not comply with the Workmen's Compensation Law, but for the first time on appeal makes such contention. It seems fundamental in our law that a case tried upon one theory in the trial court cannot be disposed of upon an altogether different theory or state of facts in the appellate court. Brigman v. Holt & Bowers (Tex. Civ. App.) 32 S.W.(2d) 220; World Oil Co. v. Hicks (Tex. Civ. App.) 19 S.W.(2d) 605. A judgment must be supported by the pleading. Moore v. Jones (Tex. Civ. App.) 278 S. W. 326. Article 2211 of the Revised Statutes provides that "the judgments of the court shall conform to the pleadings, the nature of the case proved and the verdict."

■■ We think appellant may not seek to avoid the compromise settlement agreement and the board's award based thereon, upon his pleading that the settlement agreement was procured by fraud and misrepresentations of appellee's physician as to the condition of his leg, and on appeal avoid the settlement by suggesting that the settlement did not comply with the Workmen's Compensation Law. Appellant's pleadings must apprise the opposite party and the court trying the case of the facts upon which he intends to rely. The trial court nor this court does not know what evidence was offered before the board when the settlement was before the board other than the report of the doctors; such report, if no other evidence was offered, was sufficient to satisfy the board that the extent of appellant's injury was uncertain, indefinite, or incapable of being satisfactorily established, as the parties agreed in their settlement agreement submitted was the case. Our courts have held that the award of the board has the force of a judgment, and is binding on all parties, unless and until legally set aside. Texas Employers' Insurance Ass'n v. Morgan (Tex. Com. App.) 295 S. W. 588; Vestal v. Texas Employers' Insurance Ass'n (Tex. Com. App.) 285 S. W. 1041.

It cannot be claimed that the action of the board in approving the settlement agreement was void, and for that reason is of no force or effect. In the last above cited case it is held that the functions of the board are quasi judicial, its orders are given force, have finality, and cannot be collaterally attacked.

As said above, no appeal was taken from the order of the board, and it is not made to appear that the board's order has been set aside or annulled by any direct proceeding, unless the action of the board by its order of April 1, 1929, in directing that appellee pay to appellant the additional sums of money, had the legal effect to annul and set aside its previous order of settlement. The record shows, in substance, the following: On February 1, 1929, appellant petitioned the board to reopen the case and to make such award to which he might be entitled, alleging, in substance, his changed condition, since the settlement agreement was made, the loss of his leg by amputation; that appellant was induced by appellee and its employees to execute the settlement agreement and release for a grossly inadequate consideration by fraudulent representations, and the mistaken belief that he had practically recovered from his injury, etc.

The board thereupon, on a hearing, entered its order setting aside its former order of approval of the compromise settlement, and declared it to be of no binding force and effect, and ordered a reopening of appellant's claim before the board on its merits, and, after evidence heard, by its order changed and fixed the amount of compensation different to what it was under the agreement settlement, and as complained of by appellee.

■ On the issue submitted to the board, within the compensation period, that the compensation agreement settlement had been procured by fraudulent representations of appellee's representatives, and mistake, we think the board may review its previous award and change its order of compensation, under the provisions of article 8306, § 12d, of the Workmen's Compensation Law, which reads: "Upon its own motion or upon the application of any person interested showing a change of conditions, mistake, or fraud, the board at any time within the compensation period may review any award or order, ending, diminishing or increasing compensation previously awarded within the maximum and minimum provided in this law, or change or revoke its previous order."

We think the board acted within the law in reviewing its former award and order. Lumbermen's Reciprocal Ass'n v. Day (Tex. Com. App.) 17 S.W.(2d) 1043.

The application for such review presented to the board for its consideration the statement of facts not theretofore considered by the board, and which, if found to be as alleged, would be ground for change in the former award approving the settlement agreement, and which the board found to be true under the evidence submitted on the hearing. The trial thereafter is in the district court, and is a trial de novo, and, under article 8307, § 5, "all questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided * * * determine the issues in such cause instead of the board." The only issues not agreed to seem to be "that the said W. R. Estes was induced by the said plaintiff, its agents, servants and employees, to execute a (the) release * * * in fraud * * * and upon the fraudulent representations, and the mistaken belief that he had practically recovered from said injury, and that within a

very short time he would have fully recovered therefrom, and that his said left leg would be as good as before the injury" (representations of Dr. Young) ; that he had confidence in the opinions, ability, etc., of Dr. Young, believed and relied fully upon such representations as being true, he executed the release, and but for such representations he would not have executed the release ; and as further ground (of the fraud) he alleges that the representations of Dr. Young made to him were made for the purpose of having him to act upon them, and that he did so act. He alleges that said representations were not true in fact ; that, though there were no outward indications of any future trouble to his leg, it became necessary in about two months thereafter to amputate the leg.

We then have on the trial as "showing a change of conditions, mistake, or fraud," as grounds for the review and setting aside the settlement agreement and increasing the former award to 200 weeks. Appellant suggests a change in the condition of the leg apart from mistake or fraud, as a sole ground for setting aside the former award and increasing it to 200 weeks. We understand from Lumbermen's Reciprocal Ass'n v. Day Case, supra, such alone would not be sufficient ground. We then have "mistake" and "fraud"; the latter consisting of the representations of Dr. Young as the issues relied upon and to be tried in the court.

The statute does not define "mistake" as here used. It must be a mistake of fact upon which proof may be offered, whether mutual or unilateral. We think, to be an independent cause or defense against a plea in bar, it may not be a mistake as to the true or real condition of the leg, but some fact apart from the condition of the leg, some fact material to the contract of settlement and not to an opinion as to future conditions as the result of present known facts, and which fact was unknown to appellant, but known to appellee, and which fact, independent of the fraud charged, induced appellant to act to his disadvantage. We have concluded that the "mistake" charged, whether mutual or unilateral, can be considered, not as a separate independent ground for the review and change of the award, but only in connection with and as an element of fact in the issue of fraud, that is, that appellant did not know, when the first award was made, based on the settlement agreement, that a change in the condition of the leg for the worse would take place in the condition of his leg. The Supreme Court of Oklahoma, in Davis v. Higgins, 95 Okl. 32, 217 P. 193, held that, in a case where plaintiff relied on fraudulent representations to set aside the release, the law relative to mutual mistake was not applicable. If appellee knew no more of the possible change in the condition of the leg a "mistake" as to such change would seem to be analogous

to a change of "conditions" discussed in the Lumbermen's Reciprocal Ass'n v. Day Case. As said in that case, the section of the act making provision for the approval of compromise settlements presupposes an uncertainty either as to the liability of the insurance company or the extent or nature of the injury of the employee. It certainly could not be the law that, after a compromise settlement had been made, either party could say, as ground for setting it aside, they were mistaken in their opinion as to what the result of the injury would be. The compromise contemplates that a chance is taken.

The only other issue we think necessary to discuss is that of the fraud alleged. Should the alleged fraudulent misrepresentations of Dr. Young have been submitted to the jury? It was immaterial, we think, what the evidence or the finding on the issue of fraud was before the board. The trial before the court was de novo, and the question of the submission of the issue of fraud must be governed wholly by the evidence before the court on the trial.

We will not, in what we may say, enter into the general subject of fraud, more than to say that misrepresentation is a prolific source of equitable relief. In the concrete case presented, if Dr. Young, with the intention of misleading appellant, misrepresented the real condition of appellant's leg when it was his duty to speak, and by such misrepresentation induced appellant to enter into the settlement contract, and by which misrepresentation appellant was placed at a disadvantage in making the settlement contract, and appellant relied upon the representation made as being a true condition of his leg, when in truth and fact such condition of his leg was not as represented, appellant would not be bound by the settlement contract, and, such facts being made to appear, the court should have submitted the issue of fraud by reason of such misrepresentations to the jury. On the other hand, if appellant did not rely upon the representations made by Dr. Young as to the condition of his leg, but employed other physicians of his own selection, who advised him of the condition of his leg, and under such advice he made the settlement contract, he could not, under such condition of fact, be heard to say that he was induced to contract by the statement of Dr. Young.

The undisputed evidence shows that, after Dr. Young had reported to appellee the condition of appellant's leg, as alleged, appellant, in view of a compromise settlement, employed two physicians of his own selection to examine his leg and fully advised him as they at that time believed the condition of his leg to be, and, under the advice of his attorney, in view of the report of appellant's physicians, the settlement contract was made, and we think appellant may not say, under

418

such state of facts, that he was induced to contract by the report of Dr. Young. Under such uncontroverted evidence, there can be no fraud, and no issue of fraud to be submitted to the jury. In fact, as we view the record, the application of appellant to the board to have the board approve the settlement contract offered the affidavits of the three physicians to show that the extent of the injury was uncertain, indefinite, and incapable of being satisfactorily established. The report of Dr. Young as to appellant's condition was made by the doctor to appellee, at its request, and not to appellant for his information.

Fred L. Perkins, an attorney, who represented appellant in the settlement contract, testified: Before any settlement was made, an examination and oral report of appellant was made by Drs. Armstrong and Corbett, to the witness and appellant. A written report was thereafter made to them; the witness and appellant read and discussed the report, and witness then advised appellant that he thought he was making a "pretty good settlement." The proposition to settle was made by witness and not by appellee. Witness did not see Dr. Young's report. In making the settlement, "We all relied on Dr. Armstrong's report. We did not consider Dr. Young's report at all."

We have concluded from the record before us that the court was not in error in instructing the jury.

The case is affirmed.