PATE *v.* GOYNE.

4-8254                                                          204 S. W. 2d 900

Opinion delivered October 13, 1947.

*Boyd Tackett,* for appellant.

*Abe Collins,* for appellee.

GRIFFIN SMITH, Chief Justice. W. B. Goyne, a resident of Kilgore, Texas, authorized his son, L. A. Goyne, to sell 450 acres of Sevier County land. The son, who lived at Lockesburg, Ark., listed the property with Oscar J. Pate, a realtor, at $11,500. There was a dispute re-

garding the son's authority, but this becomes unimportant in view of conclusions we have reached.[1]

The contract of June 22, 1945, was that for a period of twelve months Pate should have the exclusive right to sell. Such agency should continue until terminated by written or oral notice. If the property were sold by Pate "during the twelve-month period", Goyne was obligated for a commission of $575. The concluding paragraph is: "I further agree to pay said commission to Oscar J. Pate if said property be sold or otherwise disposed of by any other person, firm, or corporation including the undersigned, during the above period, or after the above period, on information given, received, or obtained through this agency".

L. A. Goyne made a direct sale, for $11,500, without reference to Pate. The latter claimed five per cent. and sued when refused. With completion of evidence each side requested a directed verdict and neither asked other instructions. The Court then made findings of fact and declarations of law. An appeal is from a judgment disallowing the commission.

Pate testified that immediately after the contract was signed he began making seller-buyer contacts. A prospective purchaser in Louisiana desired information not disclosed with the listing. Thereupon the agent wrote L. A. Goyne that an interested "prospect" wanted to be clear as to certain details. This letter was dated June 27th. Goyne replied the following day, stating that during the preceding night he had sold. He also said, "If you have been out any money I will pay you when I see you". Pate construed the contract to mean that even if the landowner made a direct sale irrespective of information given or effort exerted by him, the commission had been earned because the contract was exclusive.

The Court found (a) on a disputed question of fact that L. A. Goyne was authorized by his father to make the contract, but (b) that the owner reserved the right

---

[1] L. A. Goyne, as a witness at the trial resulting in this appeal, testified that although his father told him to sell the land, there was an express direction that it should not be listed with the real estate agent.

to act on his own account ". . . unless said property be sold by, or through information given, received, or obtained through [Pate]".

We sustain the Court's declaration of law.

The instrument was prepared by or for Pate. The caption is, "Exclusive Listing Contract". The consideration mentioned in paragraph 1 is services rendered and to be rendered "in selling or assisting [Goyne] to sell or exchange the property". The second paragraph provides that if the lands are "sold or otherwise disposed of by Oscar J. Pate" the commission is earned.

Clearly the two paragraphs are so worded as to justify the belief by one to whom a service offer is made that compensation does not become due until a sale has been effectuated through efforts exerted by the agent or by reason of services, for there is the expression *"if* the property be sold or otherwise disposed of". But the final paragraph adds materially to what has gone before. Here it is stipulated that the commission is earned "if said property be sold or otherwise disposed of by any other person, firm or corporation including the undersigned". If the contract had ended there its intent would have been clear, and a sale by the owner would be the equivalent of a sale by the agent. In brief, the mere fact of listing, coupled with anticipated efforts in procuring a purchaser, would be sufficient consideration. If the owner sold there would be a conclusive presumption the commission had been earned, and purpose of the contract served.

The parties, however, chose to limit the liability by adding ". . . on information given, received, or obtained through this agency".

It is conceded that Pate was not in touch with the actual buyer. The first knowledge he had that this purchaser existed was when Goyne's letter of June 28th was received; hence we must consider the contract as though it read, "I agree to pay said commission if the property is sold by any other person, firm, or corporation (in-

cluding the undersigned) on information given, received, or obtained through this agency''.

Where there is inconsistency between general and specific provisions, the specific provisions ordinarily qualify meaning of the general provisions, and where words or other manifestations of intention bear more than one reasonable meaning an interpretation is preferred which operates more strongly against the party from whom they proceed, unless their use by him is prescribed by law. Restatement of the Law, ''Contracts'', Ch. 9, § 236, (c-d). This rule, says American Law Institute, is based upon the conclusion that ''Since one who speaks or writes can, by exactness of expression, more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity of language are resolved against the former in favor of the latter''. See *W. T. Rawleigh Co.* v. *Wilkes,* 197 Ark. 6, 121 S. W. 2d 886.

We are not dealing with a case where nature of the ambiguity justifies introduction of parol evidence and where the Court refused to submit the issue. Witnesses were heard and a determination of the facts was left to the Judge.

It having been found that Goyne did not sell on information ''given, received, or obtained'' through Pate, the Court did not err in holding against liability.

An appeal was taken from the Court's holding that L. A. Goyne had the right to sign his father's name to the contract. This issue is eliminated by our construction of the third paragraph.

Affirmed.