**W. W. ALDERMAN, Appellant,**

**v.**

**Ezra F. ALDERMAN, Appellee.**

No. 13015.

Court of Civil Appeals of Texas,

San Antonio.

Nov. 7, 1956.

Rehearing Denied Dec. 5, 1956.

L. B. Cooper, Cotulla, Woodrow Curtis, Pearsall, for appellant.

Fritz C. Sorrell, Pearsall, for appellee.

NORVELL, Justice.

This is a boundary dispute. After suit was filed, the parties agreed to an arbitration. This appeal involves the correctness of the trial court's action in accepting the award of the arbitrators and rendering judgment thereon despite the protests of appellant, contained in several motions filed by him.

Appellant, W. W. Alderman, filed suit against appellee, Ezra F. Alderman, seeking to establish the true boundary line between certain surveys owned by appellant and those owned by appellee, all being situated in La Salle County, Texas. The petition was filed on June 19, 1948, and remained on the docket of the district court until September 3, 1951, at which time the parties entered into a stipulation which was in effect a common law arbitration agreement. This appeal turns upon the interpretation of this agreement. The stipulation recited the existence of the boundary dispute and expressly stated that the purpose of the agreement was to establish the true boundary between the tracts of land owned by appellant and appellee, respectively. To this end, the parties agreed that D. W. Cobb, County Surveyor of La Salle County and Frank J. Schorp, County Surveyor of Frio County, together with C. A. Douglas, State Licensed Land Surveyor of Webb County, should go upon the ground "and do such work as may be deemed necessary by the last named State Licensed Land Surveyor, *adopting and ap-*

*plying the established rules and laws of surveying and construction, following the calls of the various Patents involved,* or any and all other legal evidence, for the purpose of establishing the common boundary line between plaintiff's land and defendant's land above described, and for the purpose of determining whether there are any overlaps between said surveys in which latter event effect will be given to the boundary of the senior survey which is overlapped by the junior, and that the majority vote of said three named surveyors shall be and is hereby accepted by plaintiff, W. W. Alderman, and defendant, Ezra F. Alderman, as determining the true and correct boundary line between said lands; the report of the majority of said surveyors shall be returned in this cause, signed by them, reflecting and properly describing said boundary, and such report and findings shall be incorporated in the judgment in this cause fixing said boundary and said judgement shall vest plaintiff, W. W. Alderman, as against defendant, Ezra F. Alderman, with the title to all of said premises North of said boundary, subject to the reserved free royalty belonging to the Public School Fund of the State of Texas, and shall vest defendant, Ezra F. Alderman, as against plaintiff, W. W. Alderman, with the title to all of said premises south of said line so established by a majority of said named surveyors." (Italics ours.)

This stipulation was approved by the Attorney General as the representative of the State of Texas, which was made a party to the suit, because of material interests held by it and the possible conflict of surveys. Apparently no surveying was done under the agreement for some time, as it appears that on August 25, 1955, the appellee, Ezra F. Alderman, filed a motion to vacate the agreement because of nonaction thereunder. The record discloses no ruling by the court upon this motion, but it evidently stimulated some action on the part of the surveyors and they commenced making a survey in accordance with the terms of the stipulation.

On October 17, 1955, and before the surveyors had made a report, the appellant, W. W. Alderman, filed a motion to vacate the arbitration agreement upon the grounds that the surveyors were not complying with the terms of the stipulation in making their survey of the disputed boundary line. It is inferable that a difference of opinion had developed among the surveyors, which naturally became known to the parties and resulted in appellant's motion attacking the theories of construction adopted by the majority of the arbiters. One month later, on November 17th, C. A. Douglas and Frank J. Schorp filed their report, together with field notes for the boundary line between the tracts of the respective parties and a map showing the location thereof. D. W. Cobb being in disagreement with Douglas and Schorp, refused to concur in their report. On November 19, 1955, appellant, W. W. Alderman, filed two motions, designated as the first and second amended motions to vacate the arbitration agreement, as well as a motion to continue or postpone the hearing upon the majority report and award.

All of appellant's motions were overruled, the majority report was approved and judgment rendered in accordance therewith, the trial judge being of the opinion that appellant's motions presented no issue of fact to be heard and determined. The question of whether or not a fact issue was presented controls the disposition of this appeal. As above indicated, appellant filed three motions to vacate the arbitration agreement. The last two motions purported to be amendments of the motion filed on October 17, 1955. It was urged that the arbitration agreement should be set aside because the surveyors were "not complying with the terms and conditions and provisions embodied in the agreement * * * were not following the calls of the various Patents involved, * * * and were not adopting and applying the established rules and laws of surveying and construction as provided in such agreement." In addition to these grounds, it was specifically al-

leged that such surveyors had refused to recognize an iron pin and stone mound as the southeast corner of Survey No. 21, together with a number of other detailed actions which appellant contends are not in accordance with accepted and established surveying practices.

The agreement directs the surveyors to adopt and apply the "established rules and laws of surveying and construction" and to follow "the calls of the various Patents involved" in establishing the common boundary line between appellant's and appellee's lands. As we understand appellant's position, it is that this clause made it mandatory upon the district judge to review the action of the surveyors and determine whether or not they coincide with his opinion as to what a proper construction of the various surveys and resultant boundary line should be under the rules of law deemed applicable to the situation.

We are unable to agree with appellant's position. It is axiomatic that, "An agreement should be interpreted as a whole and the meaning gathered from the entire context and not from particular words, phrases, or clauses. In fact the entire agreement is to be considered to determine the meaning of each part. All provisions should, if possible, be so interpreted as to harmonize with each other." 12 Am.Jur. 112, Contracts, § 241. Under this rule there can be little doubt that the stipulation was an arbitration agreement. It was expressly provided that the majority vote of the surveyors named in the contract should be accepted "as determining the true and correct boundary line between said lands." In Corpus Juris Secundum, it is said that, "Broadly and generally speaking an arbitration is a contractual proceeding by which the parties to a controversy or dispute, in order to obtain a speedy and inexpensive final disposition of the matters involved voluntarily select arbitrators or judges of their own choice, and by consent submit the controversy to such tribunal for determination in substitution for the tribunals provided by the ordinary processes of the law." 6 C. J.S., Arbitration and Award, § 1, p. 152. The parties to this suit had their choice of trying their boundary suit before the district court or submitting their dispute to arbitration. They chose the latter course and the disappointed party can not now have his trial by the ordinary judicial processes. He has settled his boundary by agreement and can not now litigate the issue.

Should we construe the clause relating to the "established rules of surveying and construction" according to appellant's contentions, it is obvious that the stipulation would not be an arbitration agreement but merely an instrument providing for a surveyor's report as a preliminary to litigation. An inspection of the majority report and the appellant's brief disclose a series of disputes as to the application of various rules of surveying. We are asked to determine if the surveyors were correct in honoring one corner or point in preference to another or if they erroneously fixed one corner a distance of 2.112 varas from another, and numerous other like and similar details. In other words, this Court, as was the district court before it, it requested to make its own construction of the surveys and establish its own boundary line or remand the case to the district court so that in effect a judicial trial of the boundary issue may be had. We do not believe the words of direction contained in the stipulation can be given this effect. The cardinal rule of construction is that the intention of the parties, as expressed by the language employed in the agreement is controlling. 12 Am.Jur. 745, Contracts, § 227. The parties clearly intended a settlement by arbitration and not a determination by judicial trial. The words of agreement as to the procedure to be followed by the surveyors were directory and did not operate to substitute the judgment of the court for the good faith decisions of the surveyors who were serving as arbiters.

It follows that the trial court was correct in entering a judgment upon the award in accordance with the stipulation of the parties, absent a showing that fraud, misconduct or palpable mistake contributed to the making of the award. Payne v. Metz, 14 Tex. 56, 60; Robbs v. Woolfolk, Tex.Civ.App., 224 S.W. 232; Texas Steel Co. v. Texas & Pacific Ry. Co., Tex.Civ. App., 62 S.W.2d 670, wr. ref. 6 C.J.S., Arbitration and Award, §§ 103–105, pp. 246–251. Such matters are not alleged in the motions seeking to impeach the award or vitiate the agreement upon which it is based.

From what has been said, it follows that the judgment of the trial court should be affirmed, and it is accordingly so ordered.