JAS. F. NEECE v. A. A. A. REALTY CO., INC.

No. A-6952. Decided February 18, 1959.
Rehearing overruled March 25, 1959.
(322 S.W. 2d Series 597)

*Nelson, Montgomery, Robertson & Sellers* and *Lee Sellers,* all of Wichita Falls, for petitioner.

The Court of Civil Appeals erred in holding as a matter of law that the listing cards executed by the parties under the date of August 19, 1955, resulted in an "exclusive" listing of petitioner's motel with the respondent. Commercial Standard Ins. Co. v. Davis, 134 Texas 487, 137 S.W. 2d 1; Cartwright v. Canode, 106 Texas 502, 171 S.W. 696; White v. White, 141 Texas 328, 172 S.W. 2d 295.

*House, Mercer & House* and *James D. Cunningham,* all of San Antonio, for respondent.

In response cited Kemper v. Police and Firemen's Ins. Ass'n. Texas Com. App., 48 S.W. 2d 254; Shaw v. Shaw, Texas Com. App., 58 S.W. 2d 3; Tower Contracting Co. v. Flores, 157 Texas 297, 302 S.W. 2d 396.

MR. JUSTICE NORVELL delivered the opinion of the Court.

This is an action for damages resulting from the alleged breach of a real estate listing agreement. The contract which is the subject matter of this litigation reads as follows:

**EXCLUSIVE LISTING AGREEMENT**

No. Days? *Six Months.*

Date: *August 19, 1955*

## MOTEL

I, (or we) agree to pay A.A.A. Realy Co. 7%
of the sale price, (if they sell said property), and to
protect them on their prospects or anyone that they
are instrumental in property being sold to.

Sale Price $ *410,000°°*

Address *1409 E. Scott, Wichita Falls, Tex.*

Possession *30 days after deal is closed.*

X Signature: *Jas. F. Neece*

This Court has heretofore considered this particular contract. Upon the first trial of the case the District Judge rendered a summary judgment for the defendant, Jas. F. Neece, and against the plaintiff, A.A.A. Realty Company,[1] Inc., upon the theory that the disputed agreement was an open listing agreement. This judgment was reversed by the Court of Civil Appeals and the cause remanded for another trial.[2] 292 S.W. 2d 811. We affirmed the Court of Civil Appeals and held that, "It cannot be said as a matter of law that petitioner (defendant) Neece did not by his written contract confer upon respondent (plaintiff) Realty Company, an exclusive agency to sell the property in question." [156 Texas, 614, 617, 299 S.W. 2d 270.]

A second trial was had to a jury and judgment again ren-

1.—The trial court designations of the parties will be followed in this opinion.

2.—Because of the rule of Wright v. Wright, 154 Texas 138, 274 S.W. 2d 670, the Court of Civil Appeals did not pass upon plaintiff's contention that it was entitled to a summary judgment upon the theory that the listing agreement was unambiguous and provided for an exclusive sales agency and hence plaintiff was entitled to judgment as a matter of law. This holding in Wright v. Wright, while followed in Rogers v. Royalty Pooling Co., 157 Texas 304, 302 S.W. 2d 938, was later overruled in Tobin v. Garcia, 159 Texas 58, 316 S.W. 2d 396, and is no longer followed by this Court. The history of this case well illustrates the cumbersomeness of the discarded rule announced in Wright v. Wright.

dered for Neece. The Court of Civil Appeals reversed and held as a matter of law that the written contract sued upon was an exclusive agency contract and on authority of Park v. Schwartz, 110 Texas 564, 222 S.W. 156, rendered judgment against Neece for seven per cent of $410,000, the listed sales price of the Catalina Motel. 314 S.W. 2d 384.

In our opinion the Court of Civil Appeals erred in reversing the judgment of the trial court.

While in the main, the pleadings of the parties present the contentions that as a matter of law the contract was either an exclusive listing agreement or an open listing agreement, the trial judge evidently considered that the written instrument was ambiguous and submitted numerous issues to the jury designed to ascertain the actual agreement made by the parties.

■ Two theories of recovery were open to A.A.A.; first, that the written contract was unambiguous and as a matter of law vested in it an exclusive sales agency for a period of six months from and after August 19, 1954; or, second, that the written agreement was ambiguous, but when explained by admissible extrinsic evidence, it provided that A.A.A. should have an exclusive sales agency for the six-months period mentioned. The findings of the jury were for the most part favorable to the defendant, or what is more to the point, they do not support, but on the contrary refute the theory of an ambiguous contract which, when explained by extrinsic evidence, would sustain a recovery for the plaintiff. Such theory is thus effectively removed from the case even if considered at all by the parties. The onerous burden of proving a case for recovery rested upon the plaintiff and that burden was neither lifted nor shifted by defendant's failure to secure a summary judgment upon the theory that the written agreement constituted an open listing as a matter of law. Neece was under no burden to affirmatively establish that the agreement was an open listing. On the contrary the burden lay upon A.A.A. to establish that it had an exclusive sales agency.

In order to meet this burden plaintiff presents the contention which was accepted by the Court of Civil Appeals that the written agreement was unambiguous; that it established an exclusive sales agency as a matter of law; that such agreement had been breached, and hence plaintiff was entitled to damages for such breach which amounted to $28,700.00, the amount he

would have received had the contract been carried out and the property sold at the listed price of $410,000.00.

The case turns upon question of whether or not the written instrument evidencing the contract is ambiguous.[3] If it be unambiguous and by its terms provides for an exclusive sales agency, then that is the end of the matter and A.A.A. should recover. If on the other hand the written contract is ambiguous and reasonably capable of conflicting constructions, then the plaintiff has failed to meet its burden and the trial court's judgment should be affirmed.

■ The written form of agreement devised by A.A.A. for its commercial uses is somewhat ingenious. It consists of two parts: the caption or label and a short paragraph of operative contractual obligations. If we accept plaintiff's theory of construction, the contract, insofar as legal consequences are concerned, may be entirely changed by merely substituting labels without altering the operative contractual clauses in any way. The use of labels affixed to contracts is nothing new. We have warranty deeds, deed of trust notes and through bills of lading. It would, however, be unusual to metamorphose a quit claim into a warranty deed simply by labeling it as such, or affix a deed of trust lien on land by simply calling an ordinary promissory note a deed of trust note. And of course the through bill of lading is usually backed by paragraph after paragraph of operative contractual obligations that spell out the respective rights and liabilities of the parties. While in certain cases, one must consider captions in order to ascertain the meaning and nature of a written instrument, it has been held that the greater weight must be given to the operative contractual clauses of the agreement, for "An instrument is that which its language shows it to be, without regard to what it is labelled." Bailey v. Mullens, Texas Civ. App., 313 S.W. 2d 99, l.c. 103, wr. ref., n.r.e.; Pate v. Goyne, 212 Ark. 51, 204 S.W. 2d 900.

---

3.—The Baconian distinction between patent and latent ambiguities is disregarded by the Texas courts. McCormick & Ray, Texas Law of Evidence (2d Ed.), Sec. 1683. "Parol Evidence is admissible to explain ambiguities apparent on the face of a writing. This proposition is well established and frequently applied, * * *." Id., Sec. 1685. A contract is ambiguous if, after applying established rules of interpretation to the contract, it remains reasonably susceptible to more than one meaning. Universal C.I.T. Credit Corporation v. Daniel, 150 Texas 513, 243 S.W. 2d 154, reversing Daniel v. Universal C.I.T., Corporation, Texas Civ. App., 238 S.W. 2d 727, in which the lengthy and detailed contract considered by the Court is set out in the margin of the opinion. See also 17 C.J.S. 685, Contracts, Sec. 294. However, rules for the interpretation of contracts are not inflexible, 12 Am. Jur. 745, Contracts, Sec. 226, and a court may not interpolate terms and provisions into a contract and thus under guise of construction make contracts for the parties. 12 Am. Jur. 749, Contracts, Sec. 228.

The form of contract or listing card involved in this suit contains two captions or labels. One reads, "Open Listing Agreement." The second reads, "Exclusive Listing Agreement, No. Days? _____."

The operative contractual provisions as distinguished from caption read as follows:

"I, (or we) agree to pay A.A.A. Realty Co. 7% of the sale price, (if they sell the property), and to protect them on their prospects or anyone that they are instrumental in property being sold to."

In the present case the property was not sold by plaintiff, nor was it sold to any of its prospects, nor was A.A.A. instrumental in any way in effecting the sale of the property. Had the operative contractual clause contained no caption or had the label been left as "Open Listing Agreement," Neece would have no obligation to pay A.A.A. anything. The asserted $28,-700.00 liability lies solely in a change of caption effected by marking out the words, "Open Listing Agrement" and leaving the words "Exclusive Listing Agreement" and inserting "Six Months" in the blank following "No. Days?"

No doubt the draftsman who prepared the form for plaintiff's use intended that the character of the contract, whether open or exclusive, should be fixed by erasing or obliterating one label and leaving the other. However, while the caption "Open Listing Agreement" is consistent with the operative contractual provisions of the listing, the same cannot be said of the label, "Exclusive Listing Agreement." There is suggested repugnancy between the heading, "Exclusive Listing Agreement" and the contracting clause, "I (or we) agree to pay A.A.A. Realty Co. * * * if they sell the property, * * *." By attaching the "exclusive" caption to the open listing agreement (according to its operative terms) an ambiguity arises. We have the opposite of the other detailed, "fine print" contract and are concerned with something which approaches the novel. Hence, we should be hesitant in placing our stamp of approval upon a type or method of contracting which could lead to the perpetration of frauds or injustices upon unsuspecting contracting parties. No great hardship will be entailed by insisting that contracts be clear in term or else made clear by explanation before the transfer of one man's money or property to another is ordered, adjudged or decreed.

By way of example or contrast, we quote from the exclusive listing contract used by Knapton Business Brokers, Inc. (who actually sold the property) which contains operative contractual obligations clearly fixing the character of the contract, viz:

"I own the business above described and in consideration of your advertising this business for sale, I hereby grant and give you the sole and exclusive right to sell the same for a period of 180 days from this date and thereafter until notified by me in writing.

"In the event it is sold by you, or myself, or by any other person during said time, for the price and above said terms [sic], or for a price and upon terms acceptable to me, then in either of said events, in consideration of your listing the business and endeavor to sell the same, I promise and agree to pay the regular fixed commission of 5% as adopted by the Oklahoma City Real Estate Board, * * *."[4]

Anyone of ordinary intelligence reading this agreement would know from its operative contractual clauses, i.e. clauses containing verbs, that the right to sell granted the broker was sole and exclusive and that regardless of who sold the property prior to 180 days from date (or a written cancellation of the contract thereafter), the broker would be entitled to five per cent of the sales price. There undoubtedly is a distinction between the words, "I hereby grant and give you the sole and exclusive right to sell" and "I, (or we) agree to pay A.A.A. Realty Co. 7% of the sale price, (if they sell said property), * * *" and the contracting clauses cannot be rendered substantially identical in effect by simply placing an "Exclusive Listing Agrement" label above the second clause quoted.

■ There is, of course, a distinction between a suit for compensation under a contract and one for damages growing out of a breach of contract. The Knapton agreement quoted provides for a contractual basis of recovery in the event the property is sold by one other than the contracting broker while the present action is one for breach of contract for depriving the broker of a full six-months opportunity to sell the property. Park v. Swartz, 110 Texas 564, 222 S.W. 156. But, however that may be, it seems that one reading the operative contractual clauses

4.—The Knapton agreement provides for an exclusive right to sell while the A.A.A. contract at most provides for an exclusive agency to sell. This distinction is, however, immaterial as it is undisputed that the property was not sold by Neece personally, but through the agency of Knapton.

of the contract before us in connection with its label, "Exclusive Listing Agreement" would be assailed by doubt as to the meaning of contracting parties;—sufficiently so, as to require investigation and the receiving of parol evidence to ascertain the true meaning of the contract.

■ In admitting parol evidence to explain this seeming contradiction, we do not countenance a violation of the rule against disturbing the clear meaning of a written instrument. After all, we are to construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and need not embrace strained rules of interpretation which would avoid ambiguity at all costs, especially where there is danger of enforcing obligations which a contracting party never intended to assume. As Professor Wigmore has said.

"* * * There can be, in the nature of things, no absoluteness of standard in interpretation. An imaginary communism might conceivably bring men to such a level of intellectual uniformity that their thoughts would be expressed in invariable identical symbols. But till such a day comes, the varieties of individual expression and sense must be unquenchable. So long as men are allowed to grant and contract freely, and so long as the law undertakes to carry out those acts by enforcement, just so long must the standard of interpretation continue to be mobile, subjective, and individual."[5] Wigmore on Evidence (3rd Ed.) Sec. 2462.

As opposed to plaintiff's interpretation of the written instrument, there is the theory that the only liability which would arise under the agreement was one to pay if A.A.A. sold, or was instrumental in selling the property, or such property was sold to one of its prospects. Extrinsic evidence was properly admissible. Such evidence taken with the circumstances surrounding the making of the agreement and the contract itself disclose the following record situation:

All material events took place during 1954. On April 7 the defendant Neece listed the Catalina Motel at Wichita Falls with Knapton Brokers, Inc. of Oklahoma City under the terms of the

5.—Wigmore questions the soundness of the theory underlying the rule that one cannot disturb a plain meaning. However, what he says in the above quotation is believed applicable to the present situation, although the meaning of the written instrument involved is hardly clear or plain. For a discussion of the rule against "disturbing a clear meaning," see Wigmore on Evidence, (3rd Ed.), Sections 2461-2.

contract heretofore set out. This agreement was to remain in force for at least 180 days. The sales price named was $385,000.

On July 30 R. M. Andrews, acting for plaintiff, A.A.A. Realty Company, secured an "open listing" of the property from Neece at a substantially higher price, — $410,000, which was a sufficient sum to pay 5% to Knapton, plus 7% to A.A.A. and still leave Neece with approximately the same money as he would receive if Knapton sold the property for $385,000.

On July 5 Arnold wrote Neece and requested an "exclusive listing" and enclosed a proposed form for him to sign. Neece did not answer this letter.

On August 19 Arnold went to Wichita Falls and talked to Neece about an exclusive listing. As to this conversation, there was a direct conflict in the testimony. Neece testified that he told Arnold that he was not sure that the Knapton contract had expired and for that reason did not want to give A.A.A. an exclusive listing. Then according to Neece, Arnold explained that by the term "exclusive," it was meant that if the motel were sold by A.A.A. or to one of its prospects, A.A.A. would receive all of the 7% contractual commission, exclusively.

Neece's testimony as to this matter was as follows:

"Q.   What did Mr. Andrews — (say)?

"A.   Mr. Andrews said, 'Well I really feel you don't fully understand what we mean by an exclusive listing.'

"Q.   Then what did Mr. Andrews —.

"A.   Then he pointed out this card to me and he said, 'All we want is a guarantee that if we sell the Catalina Motel or if it is sold by anyone else to one of our clients, we are to collect the entire commission.' "

Neece thereupon signed the listing card which, except for the substitution of the label "Exclusive Listing Agreement, No. Days six months," for the reading "Open Listing Agreement" was identical in terms with the one which he had signed on June 30th. Neece however signed the card in the wrong place and thereafter Arnold wrote to Neece pointing out the mistake and requested him to sign another identical card which he enclosed in the letter. This card was received by A.A.A. and is the basis

of the present action. Neece testified that this card was returned with a letter signed by him dated August 22, and addressed to A.A.A. Realty Company, Attention: R. W. Andrews. Andrews denied receipt of this letter. The body of the copy thereof received in evidence read as follows:

"I am returning the card, which I trust has been properly signed.

"I presume, that due to our little argument, about the meaning of the exclusiveness of this listing, and your pointing out, and explaining it to me confused me, resulting in signing the wrong card.

"I want to emphasize again, I would not think of depriving Mr. Gentry (Knapton's representative) of the right to sell this Motel.

"I do hope you have good luck, and come up with a good deal real soon."

On September 21 and within the 180-day period after April 7, the motel property was sold by Knapton. Neece denied any liability to A.A.A. as a result of the sale and this action was instituted on September 26.

While, as above indicated, the evidence in certain particulars was sharply conflicting, the burden of proving its case rested upon the plaintiff and the verdict of the jury affords no comfort or support to A.A.A.

The plaintiff having failed to establish its claim for recovery as a matter of law and having failed to prove a case as a matter of fact, it follows that the judgment of the Court of Civil Appeals should be reversed and that of the trial court affirmed.

It is so ordered.

Opinion delivered February 18, 1959.

MR. JUSTICE CALVERT, joined by JUSTICES SMITH and WALKER, dissenting.

The holding of the majority that the judgment of the Court of Civil Appeals must be reversed and that of the trial court affirmed because of ambiguity in the contract between the par-

ties gives this case a most peculiar turn. It will no doubt come as a complete surprise to the parties as well as to the courts below.

The presentation of the case in this Court on this occasion is the sixth time it has been before a court, and never before has it even been suggested that the contract was ambiguous. It was first presented to the trial court on motions by both parties for summary judgment. Those motions contained no hint by either party that the contract was thought to be ambiguous. The summary judgment entered by the trial court did not suggest ambiguity in the contract. Neither party suggested it on appeal from that judgment, either in the Court of Civil Appeals or in this Court.

When, after remand, the case was tried on its merits, neither party pleaded that the contract was ambiguous. Contrary to intimations in the majority opinion, no special issues were submitted for the purpose of resolving an ambiguity or which were calculated to do so. The special issues submitted the law question of whether the contract was in fact an open or an exclusive listing, whether a fraud was practiced by the defendant on the plaintiff, whether a fraud was practiced by the plaintiff on the defendant, and whether the parties were mutually mistaken as to the meaning of the contract they signed. The only proper issue for resolving an ambiguity in the instrument, if any, was one inquiring whether the parties *intended* by their contract to create an exclusive agency. No such issue was submitted. If the contract was ambiguous and the plaintiff failed to discharge its burden of pleading the ambiguity and of offering evidence to resolve it, the defendant was entitled to an instructed verdict. But the defendant did not even present a motion for instructed verdict. Instead, he sought to defeat the plaintiff's right of recovery only by securing findings supporting his affirmative defenses. It was not suggested by either party on the second appeal to the Court of Civil Appeals that the contract was ambiguous. The absence of any such suggestion in that court is reflected by the briefs of the parties and by the following statement in the opinion of the Court of Civil Appeals: "There is no contention that the contract is ambiguous; and the construction of an unambiguous contract is for the court." 314 S.W. 2d 384, 387.

The application for writ of error filed in this Court by the defendant contains no point of error or argument that he is entitled to prevail on the ground that the contract is am-

biguous and the plaintiff failed to plead the ambiguity and failed to tender evidence and secure findings to resolve it. On the contrary, defendant asserts again and again in his application that it is the duty of the court to disregard or "chop off" the title of the contract, and that the meaning of the contract is then found in "the plain and unambiguous language of the body" of the instrument which, when he signed it, he thought was in "clear and understandable language" and in which he states "there is not even the ambiguity present in the *Pate* [Pate v. Goyne, 212 Ark. 51, 204 S.W. 2d 900] case." It was not until defendant replied to plaintiff's answer to his application that he suggested that *if* the contract was ambiguous the plaintiff had failed to discharge the burden which the law required that it discharge before it was entitled to a recovery.

In reversing the judgment of the Court of Civil Appeals and affirming the judgment of the trial court on the ground that the contract is ambiguous the majority have thus violated the rule stated in this language in 3-B Texas Jur. 275, Appeal and Error, Sec. 872: "It is well established that the case on appeal or writ of error must be decided on the same theory as that on which it was tried in the court below." The rule is as applicable to defendants who undertake to inject a new theory on appeal as it is to plaintiffs who attempt to do so, Estes v. Hartford Accident & Indemnity Co., Texas Civ. App., 46 S.W. 2d 413, 416, writ refused, and is as applicable to one who seeks to sustain a trial court judgment as to one who seeks to overthrow one. Sargent v. Williams, 152 Texas 413, 258 S.W. 2d 787. The Commission of Appeals has put the rule in these words: "The law forbids the assumption of an attitude on appeal inconsistent with that taken at the trial, and on appeal litigants are restricted to the theory upon which the cause was prosecuted or defended in the court below." Boatner v. Providence-Washington Ins. Co., 241 S.W. 136, 140.

Assuming, however, that we are justified in affirming the trial court's judgment on a new theory, is the contract ambiguous? The precise basis of the majority's holding that the contract is ambiguous is difficult to ascertain from the opinion. Three possible reasons are suggested, none clearly.

The quotation from Bailey v. Mullens, Texas Civ. App., 313 S.W. 2d 99, 103, citation of Pate v. Goyne, 212 Ark. 51, 204 S.W. 2d 900, and the statement that a quit claim deed may not be metamorphosed into a general warranty deed nor a promissory note into a deed of trust by labeling them, respectively,

as such seem to indicate that ambiguity is achieved by following the defendant's suggestion that the title, "Exclusive Listing Agreement," should be disregarded or "chopped off" of the contract. But it is then admitted in the opinion that that type of judicial surgery would result in leaving in the contract only language which created an open or non-exclusive agency as a matter of law, an interpretation of the contract which we rejected on the first appeal of this case and which is now res adjudicata. And of course that conclusion is sound. A contract which merely authorizes an agent to sell property and imposes an obligation to pay him a commission creates a non-exclusive agency as a matter of law. A broker's contract creates a non-exclusive agency as a matter of law unless there is language in the contract which "either expressly and unequivocally or by clear and necessary implication" creates an exclusive agency. 12 C.J.S. 219, Brokers, Sec. 94. See also Alley v. Griffin, Texas Civ. App., 215 S.W. 479, no writ history.

Moreover, we have no right to disregard or "chop off" the title of this contract. The parties selected it deliberately. The rule of interpretation which requires rejection of the title of an instrument when it and the body of the instrument are at war and cannot be harmonized, as was the case in Bailey v. Mullens, supra, is a sound rule. We have no such instrument here. When the title of an instrument is not in necessary conflict with its other parts but may be harmonized with them we are governed by the rule announced by this Court in E. H. Perry & Co. v. Langbehn, 113 Texas 72, 252 S.W. 472, 474-475, in which we said:

"The title, like every other portion of a contract, may be looked to in determining its meaning. * * * In fact, the purpose of giving a person or thing a name is to distinguish that person, or thing, or class from others."

The opinion seems next to suggest that ambiguity is achieved by considering the title and the body of the instrument separately, thus disjointing it into conflicting parts taken out of context. The idea seems to be that if the title stood alone it would create an exclusive agency, whereas if the "contractual clauses" stood alone they would create a non-exclusive agency, and thus an ambiguity necessarily exists. That type of reasoning is in clear violation of sound rules of interpretation. Guardian Trust Co. v. Bauereisen, 132 Texas 396, 121 S.W. 2d 579, 583; 10-A Texas Jur. 344, Contracts, Sec. 171. It is our duty to harmonize all of the provisions of a contract wherever that is possible. 10-A

Texas Jur. 341, 381, Contracts, Sections 171, 189; Woods v. Sims, 154 Texas 59, 273 S.W. 2d 617, 620-621; McMahon v. Christmann, 157 Texas 403, 303 S.W. 2d 341, 344. Associate Justice Norvell at a time past stated the rule in this language in Alderman v. Alderman, Texas Civ. App., 296 S.W. 2d 312, 315:

"It is axiomatic that, 'An agreement should be interpreted as a whole and the meaning gathered from the entire context and not from particular words, phrases, or clauses. In fact the entire agreement is to be considered to determine the meaning of each part. All provisions should, if possible, be so interpreted as to harmonize with each other.' 12 Am. Jur. 112, Contracts, Sec. 241."

When under the rule of E. H. Perry & Co. v. Langbehn, supra, the title of an instrument is to be considered in interpreting the instrument it should not be disjointed from the other provisions in the instrument in order to create an ambiguity.

Finally, the opinion seems to suggest that ambiguity results when the legal import of the title is read into the body of the instrument. This seems the most likely basis for the holding of ambiguity, and seems to stem from the statement that there is a distinction and a necessary repugnance and conflict between a provision of a contract which reads: "I hereby grant and give you the sole and exclusive agency to sell," and a provision which reads: "I, (or we) agree to pay A.A.A. Realty Co. 7% of the sale price, (if they sell said property) * * *." I respectfully submit that that is precisely the contract we have before us and that its provisions are not in conflict and it is not ambiguous when subjected to the proper legal test.

A listing of property with a real estate broker has a well understood meaning. It imports the granting of an agency to sell property. Farquharson v. Lightner, 96 Kan. 117, 150 Pac. 565. The legal effect of a listing is to write into the contract between the parties the words: "I hereby appoint broker my agent to sell," and that is all that is imported into the contract when the agreement is titled merely "Listing Agreement." When the agreement is titled "Open Listing Agreement," the title necessarily imports into the contract the words: "I hereby appoint broker a non-exclusive agent to sell." When the agreement is titled "Exclusive Listing Agreement," the title, by the same token, necessarily imports into the contract the words: "I hereby appoint broker my exclusive agent to sell." We must

either give it that meaning or give it no meaning at all, and if we give it no meaning at all we are back in this case with a contract which the majority admits is not ambiguous but creates a non-exclusive agency as a matter of law.

The printed form of contract used by the parties to this suit was obviously prepared for use in creating any type of agency the parties might agree upon, the nature of the agency actually created to be indicated by elimination of the inapplicable title and retention of the applicable title. When the property was first listed by the defendant with the plaintiff on June 30, the parties eliminated the title, "EXCLUSIVE LISTING AGREEMENT," and retained the title, "OPEN LISTING AGREEMENT." The legal effect of that act, importing the meaning of the title into the contract, was to make it read as follows:

"I, (or we) *hereby appoint A.A.A. Realty Co. a non-exclusive agent to sell the Catalina Motel* and agree to pay them 7% of the sale price, (if they sell said property), and to protect them on their prospects or anyone they are instrumental in property being sold to."

No one would doubt that that agreement created a non-exclusive agency, with the possible added right in the defendant to a commission if the property were sold to one of its prospects.

When the parties entered into a new contract on August 19 they eliminated the title, "OPEN LISTING AGREEMENT," and retained the title, "EXCLUSIVE LISTING AGREE-MENT." The legal effect of that act, importing the meaning of the title into the contract, was to make it read as follows:

"I, (or we) *hereby appoint A.A.A. Realty Co. my exclusive agent to sell the Catalina Motel* and agree to pay them 7% of the sale price, (if they sell said property) and to protect them on their prospects or anyone they are instrumental in property being sold to."

That, then, is the contract before us. Does it contain an irreconcilable repugnancy or conflict? Obviously not.

A provision that an agent will be paid a commission *only* if he sells listed property does not necessarily mean that the right is reserved to appoint other agents. Nor does it necessarily mean that the owner will not be held to respond in damages if

he breaches his contract by selling through another agent. The plaintiff in this case might not have sold the property in the six months' period, but the agreement to pay it a commission *if it did* sell it is not inharmonious with an exclusive right to try to sell it in that period. Having appointed plaintiff an exclusive agent to sell and having agreed to pay it 7% of the sale price of the property, the law would have imposed liability for the commission *if they sold the property*, whether the parenthetical words were in the contract or out of it. The words may therefore be harmonized with the other language creating an exclusive agency by giving to them in the context in which they appear the operative effect of confirming an obligation which the law would imply. Parties often put into written contracts express legal obligations which in their absence the law would imply. The exclusive or non-exclusive nature of the agency is not determined by the presence or absence of an agreement to pay a commission *if the agent sells the property*. It is determined by the presence or absence of an agreement that the broker shall have an exclusive agency for a stated period in which to sell the property. If such a provision is in the contract, expressly or by necessary implication, an exclusive agency is created. If it is not in it, a non-exclusive agency is created. Putting in an additional provision that the broker will be paid a commission no matter who sells the property, as in the Knapton contract, does not add to the exclusiveness of an agency already made exclusive by express language. It simply gives the broker a right to sue on the contract if the property is sold through another in addition to his remedy by way of damages for its breach.

Actually, the words, "if they sell said property," may be harmonized with the other language creating an exclusive agency in another important particular. They expressly prevent the instrument from granting an exclusive right to sell the property and thus expressly preserve to the owner his own right to sell[1] without incurring liability for a commission, except perhaps as that right may be limited by the language which follows.

If the printed contract form had incorporated the words appearing in the title in what the majority term the "operative contractual clauses," the contract would read as follows:

"I, (or we) grant A.A.A. Realty Co. an exclusive listing— an-open-listing—(strike one) of the described property, and agree to pay them 7% of the sale price, (if they sell said prop-

---

1.—For the distinction between an exclusive right to sell and an exclusive agency to sell, See Baker v. Skipworth, Texas Civ. App., 244 S.W. 2d 299,300, writ refused.

erty), and to protect them on their prospects or anyone that they are instrumental in property being sold to."

There could be but little doubt that the contract in that form would create an exclusive agency. And yet the parties would have selected their language with no more care than they did in the instrument before us, the instrument would still contain the words, "if they sell said property," and the form of the contract would have been just as susceptible to the charge that it "might result in a device that could lead to the perpetration of frauds or injustices upon unsuspecting contracting parties."

The test for determining whether a contract is ambiguous is expressed in Universal C.I.T. Corp. v. Daniel, 150 Texas 513, 243 S.W. 2d 154, 157, where it is said:

"In a fairly recent case this court said that 'if a written contract is so worded that it can be given a certain or definite legal meaning or interpretation, it is not ambiguous.' (Cases cited). The converse of this is that a contract is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning. * * * In other words, if after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous."

The real question in this case then is whether after the application of settled rules of interpretation the contract is subject to two reasonable meanings, one of which is that it creates an exclusive agency and the other that it creates an non-exclusive agency. The analysis of the contract made in the light of sound rules of interpretation, supra, should leave no doubt that it may reasonably be said to create an exclusive agency. But may it reasonably be interpreted to create a non-exclusive agency? I submit that it cannot be. When the title is given meaning and that meaning is imported into the contract, I can conceive of no theory on which it may be said that it can reasonably be interpreted as creating a non-exclusive agency.

The thesis of the majority opinion seems to be that the contract is ambiguous because upon looking at it one would have some doubt of its meaning. That thesis is inherent in the statement that "* * * it seems that one reading the operative con-

tractual clauses of the contract before us in connection with its label, 'Exclusive Listing Agreement,' would be assailed by doubt as to the meaning of the contracting parties * * *." It is inherent also in the statement that there is *"suggested* repugnancy" and a *"seeming* contradiction" between the title and the body of the instrument. The rule of the Daniel case imposes on the Court the duty to resolve repugnancies and contradictions when that may reasonably be done. The majority recognize the rule of the Daniel case but decline to apply it. Only by declining to apply the rule of the Daniel case and by adopting the philosophy of Wigmore that "standards of interpretation [must] continue to be mobile, subjective and individual" is the majority able to find ambiguity. in the instant contract. I respectfully suggest, Wigmore to the contrary notwithstanding, that rules of interpretation are unsound which permit a court to use rules so "mobile, subjective and individual" as to decide one case by one rule and another case by a different rule. In McMahon v. Christmann, 157 Texas 403, 303 S.W. 2d 341, we recognized that separate provisions of an oil and gas lease were in "obvious conflict," but we did not hold the lease ambiguous. On the contrary, we used rules of interpretation to harmonize the "obvious conflict." If we are now to hold ambiguous all contracts which contain *suggested* repugnancies and *seeming* contradictions, making no effort to resolve or harmonize them, the rule of the Daniel case is a dead letter. It cannot be kept alive by recognizing it while at the same time we decline to apply it.

The majority undertake to support their position by quoting certain testimony and a letter of the defendant indicating that plaintiff's agent represented to the defendant that an exclusive listing meant that the plaintiff would receive a commission only if it sold the property or the property were sold to one of its prospects and that the defendant believed the representation to be true. The representation, even if made and believed, would not make the contract ambiguous. A misunderstanding by the parties of the meaning of language used in writing a contract does not make it ambiguous, and parol evidence is not admissible to show that the parties intended that the language used mean something other than what it clearly imports. Jackson v. Richards, Texas Civ. App., 157 S.W. 2d 982, writ refused; Davis v. Davis, 141 Texas 613, 175 S.W. 2d 226. The representation that plaintiff would get a commission only if it sold the property or if the property was sold to one of its prospects was literally true. An exclusive listing also gives rise to a right to damages for breach of the contract by the owner, whether or not the parties understood that to be true.

If by referring to the evidence mentioned the majority intend to imply that the plaintiff perpetrated a fraud on the defendant, that implication is negatived by the specific finding of the jury in answer to Special Issue No. 24 that the plaintiff's agent did not represent to the defendant that it did not intend to claim a commission unless it sold the property or it was sold to one of its prospects. If the majority intend to imply that the parties were mutually mistaken as to the meaning of the language they used, defendant's remedy, if any, was in reformation of the contract. He did not seek reformation. Reformation should not now be accomplished through the legal device of holding the contract ambiguous. See Jackson v. Richards, supra, and cases there cited; 10-A Texas Jur. 334, Contracts, Sec. 168.

I would hold that the contract before us creates an exclusive agency as a matter of law, and, finding no other reason for reversing the judgment of the Court of Civil Appeals, I would affirm that judgment.

Opinion delivered February 18, 1959.

Rehearing overruled March 25, 1959.